CONOVER, appellant, and WARDELL, respondent.

1. After acceptance of the deed for lands, possession taken, and payment of the purchase money, an action may be maintained where there is a mistake by omission or repugnancy in the description, and the deed may be reformed. *Quaere.* Whether a bill for specific performance is the proper form?

2. A failure to disclose facts within the knowledge of the seller of lands, to constitute fraud, must amount to a suppression of such as he is bound, under the circumstances, in conscience and duty to disclose to the purchaser, and in respect to which he cannot, innocently, be silent. Where there is no fraud or mistake in such facts, a party may properly be remitted to his remedy at law.

3. The papers executed by the parties relating to the purchase and sale of land may all be used, and they settle the meaning of the descriptive words and names used in these dealings, in preference to any other construction. Parol evidence of such meaning must be rejected where the conflict is apparent.

4. Where there is a particular recital in a deed, and general words are afterwards inserted, the generality of the words shall be qualified by the recital. The rule *falsa demonstratio non nocet* applies where there is repugnancy, and in such case the first grant by certain description prevails over a subsequent and variant demonstration.

5. The terms "our homestead," "the Wardell farm," and "the premises which Henry Wardell died possessed of," used in the papers, will be controlled by the precedent particular description by metes and bounds, when followed by the words in the deed—"it being the same premises that Henry Wardell died possessed of, and it being hereby intended to convey to said Conover all the land and premises lying within the above boundaries." They will not be held to include several strips of land lying outside of the boundaries, which were formerly part of the Wardell farm, and which have been separated therefrom, and advertised for sale in lots.

*Mr. W. H. Vredenburgh* (with whom was *Mr. J. Parker*), for appellant.

The bill was filed to compel specific performance of an agreement to convey land. The prayer of the bill is, that defendants convey to complainant the "Wardell farm," situate in Long Branch, New Jersey, of which defendants, or any of

them, were seized at the execution of the agreement, embracing several portions of the said "Wardell Farm," particularly described in said bill.

Complainant's right to relief depends upon construction of agreement to sell and convey, dated June 26th, 1865, executed by defendant's agent with complainant. The agreement should be construed in the light of the contemporaneous power of attorney, dated June 26th, 1865, executed by defendants to their agent, empowering him to sell.

The construction of the terms of those instruments must determine complainant's right to parcels of land in question. The rule is well settled, that their terms cannot be controlled or varied by *extrinsic* evidence. *Stoutenburgh* v. *Tompkins*, 1 *Stockt.* 332.

No fraud, accident, mistake, or surprise is alleged by defendants to exempt those instruments from this rule of construction.

The language of the power of attorney upon which a construction must be placed is, defendants authorize their agent to sell and convey, &c., *all our "Homestead Farm on Fresh Pond;* Beginning at or near the Fresh Pond school-house, in the middle of the highway, and running easterly, as the ditch and fence now stands, to the sea or ocean," &c.

The language of the agreement is, "all that tract or parcel of land lying and being on Fresh Pond, in Ocean township, county and state aforesaid, and *known as the Wardell farm;* and begins in the middle of the road leading from Long Branch to Fresh Pond, near the corner of the Fresh Pond district school-house, and runs easterly, as the ditch and fence now stands, to the sea shore," &c.

The defendants failed to convey to complainant certain parcels of land of which they were seized and possessed at the time of the agreement, and are now, and which *adjoined to and were parts of* their "Homestead or Wardell Farm" on Fresh Pond. They claim that they have conveyed all they were bound to convey by giving complainant a deed which, by courses and distances, describes a tract *less* tahn

the Homestead or Wardell Farm (as it then existed), and leaves out the portions in question.    The defendants say that all of the Wardell farm *south* of the ditch and fence referred to in power of attorney and agreement, still belongs to them, and they have a right to retain it.

The rule is, that the purchaser is entitled to have the contract specifically performed as far as the vendor can perform it.    See 1 *Story's Eq. Jur.*, §§ 746, 751, 779 ; *Losee* v. *Morey*, 57 *Barb.* 561.

If the defendants were bound to convey to complainant all of the *Wardell Farm*, which they then owned, then the complainant is entitled to relief.

If they can fulfill the terms of their agreement by making their south boundary in accordance with the course of the ditch and fence, and *not* in accordance with their *true* south line, then the complainant is not entitled to relief.

The first rule of construction is, that the deed be taken most strongly against him that is agent or contractor, and in favor of the other party.    2 *Black's Comm., p.* 380; *Co. Litt.* 36 *a.    Verba fortius accipiuntur contra proferentem.*

The second rule of construction which complainant invokes is, that words used as an *additional* description will not vitiate anything sufficiently described before.    *Goodtitle* v. *Paul*, 2 *Burr.* 1089 ; *Mason* v. *White*, 11 *Barb.* 173.    "My farm at Bovington" means all my farm at Bovington.

The mistake in the power of attorney and agreement was the mistake of *defendants*, not *ours*.    The defendants gave a *false description* of "*all our Homestead Farm on Fresh Pond.*"    That mistake, contradiction, and falsity in the instruments was *theirs*, not the *complainant's*, and ought not to injure complainant.    It was the defendant's *falsa demonstratio* of what they had before sufficiently described.

The complainant had a right to believe the *monumental* description in gross, which could be most readily understood by him.

The complainant paid for the *whole* farm, not a *part* of it. No reservation or exception was made by defendants of

any part of that "Wardell Farm" for themselves, and yet defendants claim now the right to reserve a part of said farm for themselves.

The expression used by defendants in power of attorney, "supposed to contain seven hundred acres," was calculated also to deceive complainant.

The principal laid down in 2 *Black's Comm.* 380 applies, that "doubtful words and provisions in a deed are to be taken most strongly against the grantor, he being supposed to select the words which are used in the instrument." See also *Bac. Abr., Grant* 1; *Dunn* v. *English*, 3 *Zab.* 126.

The defendants, by attaching a faulty description to what was sufficiently described before, could not thus impair the prior grant.

The ditch and fence line cuts off and leaves for defendants a part of "The Wardell Farm," as it is now, and was then, owned by defendants.

Under the authorities, the defendants are bound to convey to complainant all of that "Homestead" or "Wardell Farm" which they *then owned;* their subsequent description was false, repugnant, and contradictory to the first. See cases of *Cate* v. *Thayer*, 3 *Greenl.* 71; *Keith* v. *Reynolds*, 3 *Ibid.* 393; *Hobart* 188; *Lodge* v. *Lee*, 6 *Cranch* 237; *Thatcher* v. *Howland*, 2 *Metc.* 44; *Worthington* v. *Hylyer*, 4 *Mass.* 195; *Wheeler* v. *Randall*, 6 *Metc.* 529–532; *Black* v. *Grant*, 50 *Maine* 364; *Spiller* v. *Scribner*, 36 *Vt.* 245; *Cutler* v. *Tufts*, 3 *Pick.* 277; *Ela* v. *Card*, 2 *N. H.* 175; *Abbot* v. *Pike*, 33 *Maine* 204; *Drinkwater* v. *Sawyer*, 7 *Maine* 366; *Marr* v. *Hobson*, 22 *Maine* 321; *Pike* v. *Munroe*, 36 *Maine* 309.

Again: where two descriptions of land are conveyed, one by *name*, and the other by *metes and bounds*, or *courses and distances*, the grant will operate to pass the land according to that description which is *most beneficial to the grantee.* *Hawkins* v. *Hanson*, 1 *Har. & McHen.* 523; *Vance* v. *Fore*, 24 *Cal.* 435; *Hall* v. *Gittings*, 2 *Har. & John.* 112.

The complainant asks that the power of attorney and agreement be construed so as to be most beneficial to him.

Where there are two clauses in a deed, of which the latter is contradictory to the former, then *the former shall stand.* See *Cruise's Dig., tit. "Deeds," ch.* 20, § 8; 23 *Am. Jurist, p.* 279.

Another rule governing the construction of deeds containing conflicting descriptions, is that the description the least likely to be affected with mistakes is to be adopted. *Vance* v. *Fore,* 24 *Cal.* 435.

The description, "*All our Homestead Farm on Fresh Pond,*" is capable of *no mistake.* But the description, "Beginning at or *near* Fresh Pond school-house, &c., and running easterly, as the ditch and fence now stands, to the sea or ocean," &c., is capable of mistakes. Because, the word "*near*" is *indefinite.* It might mean one yard or fifty, off from Fresh Pond school-house. Because, the word *easterly* is indefinite, and permits the course to run as complainant claims it. Because, the words "ditch and fence" are indefinite. They did not extend, by *one hundred and fifty yards,* to the sea. There were many other ditches and fences there such as these. *They* might take in the portions in dispute.

The case must be determined upon the *writings* between the parties.

Parol evidence that, at the time of the bargain, the parties were on the land, and that the defendants designated points upon alleged boundary line, is inadmissible. *Peaslee* v. *Gee,* 19 *N. H.* 273.

All parol evidence as to the directions defendants gave Morris about what land he should sell, was clearly incompetent. The defendants cannot contradict their power of attorney in that way. They cannot come in court to show they had a different *intention* from that expressed in their deed of authority to Morris.

If the parol testimony is admissible in the construction of these instruments, then we submit that the evidence shows the complainant agreed with Morris to buy "*all the land H. Wardell died seized of, not conveyed away at that time.*" The extrinsic facts and circumstances show that complainant is entitled to the relief prayed for in his bill of complaint.

*Mr. R. Allen, jun.,* and *Mr. B. Williamson,* for respondents.

The opinion of the court was delivered by

SCUDDER, J.

The facts in this case are set forth in the Chancellor's opinion (5 *C. E. Green* 266), and will therefore be stated again, and referred to, only so far as may be necessary to determine the points to be settled upon this appeal.

The particular prayer of the bill is for a specific performance of the contract between the parties, by the execution and delivery of a deed or deeds of conveyance for the "Wardell Farm," of which the respondents, or any of them, were seized at the time of making and executing said agreement; for giving possession thereof; and for the several pieces and parcels of said "Wardell Farm," which they have failed and neglected to convey to the appellant, and particularly mentioned and set forth in the bill of complaint; and to account for rents and profits. Added to this is the general prayer for relief.

It may be doubted, as was suggested on the argument of the cause, whether it is technically correct to frame the bill for a specific performance of a contract for the sale of land, after acceptance of the deed, possession taken of the premises, and payment of the purchase money under it. The form of the relief which should be stated and prayed for, would seem to be more properly to reform the deed, because of a mistake by omission, or for repugnancy in the description. If there has been such mistake made in the conveyance, by the rules of equity the deed may be reformed by correcting the mistake, so as to make it read as it should have done, and by directing a further conveyance to perfect the title. Or, if there is repugnancy, the court may determine which part shall prevail, and settle the intention of the parties according to established rules of construction. The strictly appropriate remedy, in either case, would seem to be to reform the deed. The complainant's case is either, that all

the land is not contained in the deed that should be, or that it is included, but so expressed as to leave it of doubtful interpretation. He therefore asks for a correction and for possession of the disputed land.

But the point of the form of application is not material here, because, under the general prayer, the court may give such relief as is agreeable to the case made by the bill.

It appears satisfactorily in the evidence, and is scarcely controverted, that there was no fraud in the contract or in the conveyance, by misrepresentation or otherwise, except that the agent, Morris, during the negotiations for sale, did not disclose to the appellant that the respondents were the owners of the small gores and parcels of land in dispute, lying south of the first course in the deed; and that said Morris then stated that these had been sold to other parties. It appears that there had been a parol contract for the sale of these pieces of land before that time; that they had been in part occupied, at least, by one of the contractors, and were separated from the other lands by a fence and ditch; and Morris supposed they had been conveyed. The respondents, of course, knew that they had not been actually sold, but they had separated them from the balance of their farm, offered to sell them to others, and had made the above stated incomplete contract for sale. Suppose that Morris had known exactly these facts, and had stated them to the appellant instead of saying that they were sold, could he insist that they should be conveyed to him? And is it probable that with this knowledge he would have made it a condition of his purchase of the property? There was no specific value in these small lots, in connection with the property, and they can in no way be regarded as a material ingredient of the purchase. It is not every concealment, even of facts material to the interest of a party, which will entitle him to the interposition of a court of equity. The case must amount to a suppression of facts, which one party, under the circumstances, is bound in conscience and duty to disclose to the other party, and in respect to which he cannot, innocently,

be silent. This is within the exception, unless we hold that the man who, in conscience, regards that as sold which he has agreed to sell, is a fraud doer even in so stating. 1 *Story's Eq.* 204; *Nicholson* v. *Janeway*, 1 *C. E. Green* 285.

This is, therefore, not a case of fraudulent concealment, nor is it one of extraordinary damages and hardship, as made by the bill and the proofs. The complainant might, therefore, properly be remitted to his remedy at law if he have any grievance, unless there has been some mistake by omission in the description contained in the agreement, or in the conveyance.

The Chancellor, in his opinion, has shown very conclusively from the testimony, that there was no mistake in fact, because the respondents conveyed all that they actually intended to convey, being the land lying north of the southerly line of survey, the first course of the description contained in the deed; excepting thereout lands before conveyed to Riell and to the Long Branch Railroad Company; and that the appellant received all that he supposed he was entitled to at the time. He was on the land before the agreement and conveyance; the premises were mapped and surveyed, and these lines and boundaries, together with the title deeds, were put in the hands of Philip J. Ryall, a careful and accurate attorney, and the son-in-law of the appellant, for the purpose of examination and for preparation of the conveyance. This map, which is produced in evidence, shows the first course in the boundary exactly as it is described in the agreement and in the deed to the appellant.

The mistake, therefore, if any there be, must be in the construction which has been put on the terms used in the agreement to describe the land intended to be conveyed.

The appellant insists that, by the true and legal construction of the agreement, he is entitled to have a further conveyance of three lots of land lying south of the beginning course in his deed, because they were part of the Wardell farm at the time of the contract of purchase. As thus stated, this is a question of construction, and must be determined by

the papers—the written evidence of the agreement between the parties.

At the commencement of the negotiations between the appellant and Morris, the agent of the respondents, the former insisted that the latter should obtain a written power of attorney for his greater security in dealing with him. This was done, and it is in evidence, dated June 26th, 1865. By it the respondents appointed Jacob W. Morris, of Long Branch, their lawful attorney for them, and in their name to sell, grant, and convey "*all our homestead farm on Fresh Pond, beginning at or near the Fresh Pond school-house, in the middle of the highway, and running easterly as the ditch and fence now stands, to the sea or ocean,*" *&c.*, continuing to the last courses, which reads: "*thence westerly along Wardell's line to the Fresh Pond road; thence up said road southerly to where it began; supposed to contain seven hundred acres; reserving thereout say one hundred acres, sold and conveyed to a Mr. Riell, and to the Long Branch and Sea Shore Railroad Company,*" *&c.*

On the same day, June 26th, 1865, Morris, as attorney of respondents, and the appellant made an agreement in writing, that he, Morris, acting as aforesaid, for the consideration of $30,000, would well and sufficiently convey to the said Arthur V. Conover, his heirs and assigns, on or before the first day of April then next (1866), "*all that tract or parcel of land lying and being on Fresh Pond, Ocean township, county and state aforesaid, and known as the Wardell Farm,*" and begins in the middle of the road leading from Long Branch to Fresh Pond, near the corner of the Fresh Pond school-house, and runs easterly as the ditch and fence now stand, to the sea shore," thence, &c., "to the beginning; supposed to contain five hundred acres, be the same more or less; reserving through the same the right of way now deeded to the *Long Branch and Sea Shore Railroad Company;*" adding, "*and is intended to convey all lands in the boundaries above mentioned.*"

By indenture, dated October 28th, 1865, the respondents

conveyed to the appellant, for the consideration of $30,000, *"all that certain farm and tract of land situate, lying, and being in the township of Ocean, county of Monmouth and state of New Jersey, beginning in the centre of the road from Lane's End to Raccoon Island, and near the corner of the Fresh Pond district school-house;* thence along the line of William West and others, north sixty-seven degrees and fifteen minutes east, twenty-five chains, more or less, to the Atlantic ocean ; thence northerly along the ocean," &c., "to the beginning," &c., "supposed to contain five hundred acres, more or less; *it being the same premises that Henry Wardell died possessed of, and it being hereby intended to convey to said Conover all the land and premises lying within the above boundaries,* except only such rights and interests as were acquired by the Long Branch and Sea Shore Railroad Company by deed," &c.

By indenture of the same date, October 28th, 1865, but executed November 1st, 1865, Jacob W. Morris conveyed to the appellant, Arthur V. Conover, all his interest in said lands by the same description found in the deed. What was the object of this deed does not appear, except, as it was said on the argument, "for the abundance of caution." There is a clause, however, at the close of the description, which may have some significance in determining hereafter the true construction of the agreement and conveyance between the parties. It reads thus : "The above premises are known as the farm of Henry Wardell, deceased, and the widow and heirs of said Henry Wardell, deceased, have, by deed of even date herewith, conveyed directly to said Arthur V. Conover."

These four several papers between the parties, and concerning this subject matter, although not exactly contemporaneous, are so, substantially ; and all may therefore be used to ascertain the intent of the parties.

This intent is to be gathered from the papers, and parol evidence can only be received to ascertain the mind of the parties as expressed in writing, by facts locating the descriptions, and putting the court, as to such facts, in the position

of the parties to the agreement. The parol evidence, therefore, which was introduced upon both sides, to show the intention of the parties by their declarations, at or about the time of the agreement and conveyance, must be rejected as incompetent. *Opdyke* v. *Stephens*, 4 *Dutcher* 83; *Fuller* v. *Carr*, 4 *Vroom* 157.

The great force of the appellant's argument was used to show that the descriptive words in the several papers were repugnant, and that the particular description must give way to the general, according to the maxim *"falsa demonstratio non nocet."* The rule invoked is thus stated: "As soon as there is an adequate and sufficient definition, with convenient certainty of what is intended to pass by the particular instrument, any subsequent erroneous addition will not vitiate it." *Broom's Max.* *490.

Or thus: "Where there is a sufficient certainty of demonstration, as in the case of a grant of all my messuage and farm called A B, no subsequent error in descriptive circumstances will vitiate the grant. Thus, if the grant be of all that my messuage or farm called A, now in the occupation of B, the farm called A will pass, although in point of fact the farm be in the occupation of C, and not of B; for the false demonstration by the name of the occupier will not vitiate the grant."

But another rule is equally applicable to this case, which is, that where there is a particular recital in a deed, and general words are afterwards inserted, the generality of the words shall be qualified by the recital; according to the maxim, *Verba generaliter restringuntur ad habilitatem rei, vel personœ.*

The numerous difficulties with which this subject is involved, will be found well illustrated in these several authorities. 2 *Pres. on Abs.* *205, &c.; 4 *Greenl. Cruise* *245, *270, *271, and note; *Broom's Max.* *501; *Stukely* v. *Butler*, *Hob.* 168; *Cutler* v. *Tufts*, 3 *Pick.* 272; *Sprague* v. *Snow*, 4 *Pick.* 54; *Mason* v. *White*, 11 *Barb.* 186; *Goodtitle* v. *Paul*, 2 *Burr.* 1089; *Lodge* v. *Lee*, 6 *Cranch* 237.

It will be observed that the rule *falsa demonstratio non nocet,* applies where there is repugnancy; and in such case the first grant by certain description, prevails over a subsequent and variant demonstration, except in those cases where equity will relieve on the ground of mistake or fraud, which we have already considered. But a careful examination of the papers between the parties, has led me to the conclusion that there is no such repugnancy.

In the power of attorney, the land to be sold and conveyed is described as all our homestead farm on Fresh Pond, beginning, &c., giving the ditch and fence as the monuments of the southern boundary to the sea.

The agreement to sell, following, cannot exceed this description, which limits the authority of the agent. The principals can only be bound within the terms of the authority given, or so far as they have subsequently ratified it by the conveyance.

In the agreement the description is, all that tract or parcel of land being on Fresh Pond, &c., and known as the Wardell Farm, and begins in the middle of the road, &c., and runs easterly as the ditch and fence now stand to the sea shore, &c., running around by metes and bounds to the beginning; and adding: "*And is intended to convey all lands in the boundaries above mentioned.*"

It will be noticed that in this instrument the terms are varied from "our homestead" to "known as the Wardell Farm," and if the latter includes more land than the former, it is an excess of authority.

Again: in the deed it is described as all that certain farm and tract of land situate, &c., beginning at the centre of the road, &c., thence along the line of William West and others, north sixty-seven degrees and fifteen minutes east, twenty-five chains, more or less, to the Atlantic ocean, &c., running around the survey by metes and bounds to the beginning. It is proved in the case, that this first or southerly line of the survey, is the same indicated in the others by the ditch and fence. It is added, "it being the same premises that Henry

Wardell died possessed of, *and it being hereby intended to convey to said Conover all the land and premises lying within the above boundaries, except,"* &c.

To these different descriptions Morris has added in his deed of release, after a particular boundary according to the deed, " the above premises are known as the farm of Henry Wardell."

If there be repugnancy here, which is the one certain first description which shall prevail? Is it " our homestead?" That is not in the agreement, or in the deed. Is it " the Wardell Farm?" That is not in the power of attorney to the agent, and therefore without authority in the agreement, unless identical with " our homestead."

In the deed it is said to be " the premises which Henry Wardell died possessed of." This last expression, where it is used, follows the particular description by metes and bounds, and is qualified and restricted by express words to the boundaries included in the deed, which are said to be the intention of the conveyance. It is also false, because neither the homestead nor the Wardell Farm, at that time, were the same premises that Henry Wardell died possessed of, for several pieces of land taken off the farm had been conveyed since his death to other persons. The one certain description, which does not vary in all the papers, is the particular boundaries, especially this southern line in dispute; and it is manifest they were not used merely as a reiteration, or affirmation of preceding general words, but clearly indicate the intention, and designate the thing granted.

But, upon the testimony, there is no repugnancy. Whether it was the homestead or the Wardell Farm that was to be conveyed, it must be taken as it existed at the time of the agreement, and not as it was at the death of Henry Wardell·in 1852. Part had been sold off after his death, and to that extent it is not claimed. What, then, was the homestead, or Wardell Farm, at the time of the agreement?

About fifteen years before the agreement, and within a short time after the death of Henry Wardell, the adminis-

trators of his estate, with the concurrence of the widow and heirs-at-law, advertised the land south of this southerly line marked by the ditch and fence, for sale.   Since that time it had been offered in lots at private sale.   Valentine, Cook, and West, each of whom had bought a lot south of the southerly line, from Henry Wardell, in his lifetime, agreed to purchase a part of the lot adjoining theirs, from the heirs.

These circumstances, in connection with the particular description by the boundaries contained in all the papers, is satisfactory proof that the gore of seven acres and seventy hundredths, and the two other small pieces of land south of the beginning line, had been separated from the farm for the purpose of sale, and were so regarded by the Wardell family. If this be so, then the appellant has, in his deed, the very property intended by all the terms used in the description, and it would be both inequitable and illegal to give him more by implication.

In every aspect of the case, therefore, the appellant is not entitled to the relief prayed in the bill.   The bill of complaint was properly dismissed, and the decree of the Chancellor should be affirmed.

The whole court concurred.