NORTHEASTERN TELEPHONE AND TELEGRAPH COMPANY, complainant and respondent,

*v.*

DANIEL HEPBURN, defendant and appellant.

---

NORTHEASTERN TELEPHONE AND TELEGRAPH COMPANY, complainant and respondent,

*v.*

WILLIAM B. HEPBURN and ROBERT HEPBURN, appellants.

---

NORTHEASTERN TELEPHONE AND TELEGRAPH COMPANY, complainant and respondent,

*v.*

HENRY HEPBURN, appellant.

[Argued December 2d, 1907.   Decided March 2d, 1908.]

1. Though, in construing deeds, the question is not what interest did the grantor intend to pass, but what interest did he pass by apt and proper words, and though extrinsic evidence, except such as throws light upon the circumstances and subject-matter, is to be disregarded, still the construction of a deed should be in conformity with the intention of the parties whenever the law will permit.

2. A deed to a water company having no right in its corporate capacity to operate a telegraph or telephone line except as it might be incidental to the purposes of a water company granted a right of way for the laying of water pipes, "with the right to set up, operate and maintain a telegraph or telephone line or lines thereon and with the right of ingress and egress to and from such right of way for all purposes."—*Held,* that

42

the clauses relating to the telegraph or telephone lines, and to the right of ingress and egress, were consistent with and incidental to the principal object of the grant for the construction and maintenance of the water plant, and imposed upon the land in question only the burden resulting from such telegraph and telephone lines as might be reasonably adequate for the purpose of constructing and maintaining the pipe lines authorized by the grant, and hence was not broad enough to confer on a telephone company holding under an assignment from the water company the right to use such right of way for the maintenance of a commercial telephone line.

3. The word "with," preceding the grant of the right to set up, operate and maintain a telegraph or telephone line and also preceding the grant of the right of ingress and egress, imports a close and inseparable union between those rights and the right to maintain the pipe lines, and indicates that the rights granted by the clauses following it were incidental to the pipe-line right.

4. The right to maintain "a telegraph or telephone line or lines," when construed as a right appurtenant to the right to maintain the pipe lines, does not import an unlimited number of wires, but only such as may be reasonably necessary for the maintenance and operation of the pipe line.

5. The words "for all purposes," in the appurtenant grant of the right of "ingress and egress to and from said right of way for all purposes," did not enlarge the grant with respect to the maintenance of the telegraph or telephone lines, so as to make it independent of the grant of the right to maintain the pipe lines.

6. Where a water company contracted for a right of way for the maintenance of its pipe lines with the right to maintain telegraph or telephone lines thereon, and with the right of ingress and egress to and from the right of way, it would be presumed where the company had no authority under its charter to maintain the telegraph and telephone lines as commercial lines, but only as incidental to the maintenance of the pipe lines, that the latter was the intention of the parties to the grant.

7. Where, by the terms of a grant of a right of way to a water company for the construction of such telegraph and telephone lines as might be incidentally necessary to the operation of its water plant, the possession and use of the right of way was reserved to the grantors subject only to the grant, the entrance on the right of way by a telephone company for the purpose of constructing new and additional lines for the maintenance and operation of a commercial telephone system was a violation of the legal rights of the grantors, and constituted a trespass.

8. The fact that the practical burden of an existing easement to erect telephone lines incidental to the maintenance of a water plant will be but slightly increased by permitting the erection of additional lines on the same right of way for the maintenance of a commercial telephone will not justify the interference of equity to enjoin the owners of the right of way from interfering with the construction of the additional lines, where the rights of the owners to the possession and use of the land were

expressly reserved by the grant to the water company, subject only to that grant.

9. Where a telephone company violated the property rights of owners of land by going thereon and constructing telephone lines without any right whatever, an injunction restraining the property owners from interfering with the construction of the lines will not be continued until compensation to such owners may be ascertained and made by the telephone company, in the absence of laches or acquiescence on the part of the property owners.

On appeal from a final decree of the former chancellor, advised by Vice-Chancellor Pitney, whose opinion is reported in *72 N. J. Eq. (2 Buch.) 7.*

*Messrs. Riker & Riker,* for the appellants.

*Messrs. Collins & Corbin,* for the respondents.

The opinion of the court was delivered by

PITNEY, CHANCELLOR.

These three cases are identical in their circumstances, were heard together in the court of chancery, and argued together before this court. In each case a temporary injunction was granted by the court below, and by the final decree this injunction was made permanent, and the defendants were thereby perpetually enjoined from interfering with the complainant in the erection, construction, maintenance and operation of a certain line of telephone poles, or with any cross-arms that had been or might be placed upon the poles, or with any wires that had been or might be strung upon the cross-arms.

The circumstances are as follows: In the year 1889 the East Jersey Water Company was incorporated under the "Act concerning corporations," approved April 7th, 1875. In the articles of association the objects of the company were declared to be

"the storage, sale and delivery of water, and the construction and maintenance of the necessary reservoirs, pipe lines and other works therefor, the acquisition of the necessary and appropriate property, real and personal, with the power to lease, sell, mortgage and convey the same or any part thereof."

This company made a contract with the municipal authorities of the city of Newark that provided for the construction of a system of water works for the supply of the city, including storage reservoirs in the Pequannock watershed and a water pipe line, or aqueduct, extending thence to the city of Newark. The pipe line was laid out and constructed across certain farm lands situate in the counties of Essex and Passaic, now owned by the defendants respectively. In the year 1891 certain deeds of conveyance were made by the defendants, and other deeds by their predecessors in title, granting to the East Jersey Water Company certain rights over and upon these farms. For brevity, we may call these instruments the "Hepburn deeds." They were alike in form, and their essential clauses were as follows: The grantors

"do hereby grant and convey to the East Jersey Water Company * * * its successors and assigns, the right of way over, through and across the lands hereinafter described, situate, etc., * * * in and upon which to lay, operate and maintain a water pipe or water pipes for the transportation of water to the city of Newark in said state and other places; such pipe or pipes to be laid within a space not exceeding the width (99 feet) particularly described in the description hereinafter set forth, with the right to set up, operate and maintain a telegraph or telephone line or lines thereon, and with right of ingress and egress to and from said right of way for all purposes."

Then follows a description by metes and bounds of the land affected, showing a width of ninety-nine feet. Following this is an *habendum* clause, and after it the following language:

"The possession and use of the said premises are to be and remain in the said grantors, their heirs, executors, administrators and assigns, subject to the grant herein made, as fully as if this conveyance had not been executed."

The East Jersey Water Company, by deed dated May 2d, 1892, and which recited the contract of 1889 for construction of a water-supply system, conveyed to the city of Newark all the works in the meantime erected by the water company,

"with all and singular their appurtenances, adjuncts and appliances of whatever nature, kind or description soever." * * * "and also all and every the lands and rights of way over which the conduit or conduits,

pipe line or pipe lines have been laid or constructed, and all and singular the lands and rights of way acquired," &c., "together with all and singular the ways, profits, privileges and advantages," &c.

By a further deed, dated December 21st, 1900, the water company conveyed to the city all its right, title and interest in the telephone line theretofore constructed by it, partly on said pipe line right of way and partly on other lands, reserving to the company the right to maintain two wires for its own use from Belleville to Little Falls upon the poles of said telephone line.

The city of Newark, by deed of August 24th, 1905, assumed to grant to the New York and New Jersey Telephone Company

"the right, permission and authority to construct and reconstruct, operate and maintain a line of telephone and telegraph, including the necessary poles, wires, cables and fixtures upon and along the property of the city of Newark, known as the pipe-line or aqueduct to the Pequannock watershed, between Belleville, Essex county, and the Macopin intake, Passaic county, New Jersey, with the right to trim any trees along said line so as to keep the wires clear at least eighteen (18) inches; to erect the necessary guy and brace poles and anchors, and to attach thereto and to trees the necessary guy wires, with the right to permit the attachment of the wires of other associate telephone companies to the poles erected in accordance with this grant."

The telephone company agreed to maintain upon its poles two wires for the city's telephone service, to be used in connection with the maintenance of the pipe line or aqueduct, and two wires for the East Jersey Water Company.

By deed, dated November 29th, 1905, the New York and New Jersey Telephone Company assigned and transferred to the present complainant the line of telephone and telegraph above referred to, with the right to reconstruct, operate and maintain the same.

At the time of this grant to the complainant there was a line of telephone poles upon the right of way of the pipe line. The telephone line had been constructed by the East Jersey Water Company and carried four wires, which it is admitted were adequate for the purposes of the city of Newark.

In the year 1906 the complainant determined to establish a public telephone line along the so-called "right of way," includ-

ing those portions thereof that cross the Hepburn lands. It pro-
ceeded to replace most of the poles that existed at the time of
the making of the deeds of 1905, just referred to (including all
the poles that stood upon the Hepburn lands), with larger poles
carrying a greater number of cross-arms and wires. At this
point their operations were interfered with by the appellants,
who removed all the wires of the complainant, leaving those
that belonged to the city of Newark or the East Jersey Water
Company. It would seem (although the state of the case leaves
this point in obscurity) that after the allowance of the tempo-
rary injunction the complainant re-established its telephone
poles, cross-arms and wires. And, as already shown, the final
decree grants an injunction restraining the appellants from in-
terfering at all with the telephone poles or any cross-arms or
wires that have been or may be placed thereon.

Since we have reached the conclusion that the grants made
by the Hepburns and their predecessors in title to the East
Jersey Water Company are not broad enough to confer the rights
that are asserted by the complainant and respondent, we need
spend no time upon the question whether the right to construct
and maintain a telephone and telegraph line or lines, so far as
conferred by the original grants, was capable of assignment to
the complainant, or to its immediate predecessor in title.

Our opinion is based upon the written language of the original
grants, and we have excluded from consideration the parol evi-
dence admitted by the learned vice-chancellor at the instance of
the defendants.

No doubt, in construing deeds, the question is, not what inter-
est did the grantor intend to pass, but what did he pass by
apt and proper words. *Adams* v. *Ross, 30 N. J. Law (1 Vr.)
505, 510.* Therefore extrinsic evidence, except such as throws
light upon the circumstances and the subject-matter, is to be
disregarded. But language is used in a deed because it ex-
presses a purpose, and the general rule of construction applicable
to conveyances, as to other written instruments, is, in the lan-
guage of *Sheppard's Touchstone,* that it "be favorable, and as
near the minds and apparent intents of the parties as it possibly
may be and the law will permit." *Shep. Touch. ch. 5 p. 85.*

In commenting upon this rule, Chief-Justice Beasley, speaking for this court in *Sisson* v. *Donnelly, 36 N. J. Law (7 Vr.) 432* (at *p. 440*), said: "It will be observed that by the limitations of the rule itself the intention is to be enforced whenever the law will permit. I take that to mean that the intention will prevail whenever such intention is unmistakably manifested, having regard to all parts of the instrument, unless the law requires the use of technical terms to effectuate such intention, or unless such intent is contrary to legal rules."

Examining the granting clauses, together with all other parts of the Hepburn deeds, with a view of determining the intent of the parties as expressed therein, it seems to us plain that the principal object of the grants has reference to the proposed construction, maintenance and operation of an aqueduct upon the strip of land in question. The clauses relating to the telegraph or telephone lines, and to the right of ingress and egress, must either be construed as consistent with and incidental to this principal object, or else as conveying distinct and independent rights. But it strikes the mind at once that if these rights are distinct and independent, they are for this reason quite incongruous with the pipe-line grant, and would naturally be made the subject either of a separate deed, or at least of a distinct granting clause. It is also worthy of remark that unless the telegraph and telephone rights and the right of ingress and egress are limited by force of their relation to the grant of the pipe-line rights, they are wholly unlimited, and, indeed, hardly defined. The learned vice-chancellor construed them as unlimited. The fact that such a construction seems compelled, if they be treated as independent grants, is an additional reason for holding that they were not intended to be independent grants; for it is not to be presumed that a grant is intended to be wholly unlimited and undefined.

Our consideration of the deeds convinces us that, by the most reasonable construction to be placed thereon, the grant of the right to maintain and operate a telegraph or telephone line or lines, as well as of the right of ingress and egress, is but incidental to the main object of the deeds, which is to convey the right to maintain and operate water-pipe lines upon the strips of

land described. With respect to the telephone rights and the right of ingress and egress, there is no separate granting clause. These rights are inserted in the deed immediately after the grant of the pipe-line rights, to which they are coupled by the word "with." This word in the context is, we think, as significant as the words "together with," which, as remarked by this court in *Mitchell* v. *D'Olier, 68 N. J. Law (39 Vr.) 375, 382,* import a close and inseparable union. The construction we place upon the deeds, however, does not rest upon this single word "with," but upon the entire language and apparent purpose of the deeds.

We, of course, cannot agree that the right to maintain "a telegraph or telephone line or lines" imports an unlimited number of wires. Construing the right as appurtenant to the right to maintain the pipe lines, it is limited to such number of wires as is or may be reasonably necessary for the maintenance and operation of the pipe line. We are not at present concerned with the precise limitations of the other appurtenant right—of "ingress and egress to and from said right of way for all purposes"— beyond saying that the last three words cannot, in our opinion, be reasonably held to enlarge the grant with respect to the maintenance of the telegraph or telephone lines.

It is, we think, no argument against the construction that we place upon the Hepburn deeds to say that the use of an aqueduct is different from that of a telephone line, and that one may be used without the other. It is fairly to be gathered from the terms of the Hepburn deeds that the purpose of the telephone line was to subserve the convenience of the proprietor of the aqueduct in conveying messages between the reservoirs and the city of Newark, including intermediate points along the line. Such a use is, of course, quite incidental to the operation of the aqueduct, and furnishes a sufficient reason for making the grant of the telephone rights appurtenant to the grant of the pipe-line rights.

A circumstance not to be ignored, as we think, in reaching a correct construction of the deeds in question, is the fact that the East Jersey Water Company did not possess the corporate capacity to operate a telegraph or telephone line, except as it might

be incidental to the purposes expressed in its articles of association as above quoted. We do not dissent from the view entertained by the learned vice-chancellor to the effect that where a corporation is incompetent by its charter to take a title to real estate, a conveyance to it is not void, but voidable, and that only the public authorities can object. *Fritts* v. *Palmer, 132 U. S. 282, 291.* But here the very question is whether, by the true construction of the Hepburn deeds, they do convey an interest such as the East Jersey Water Company was not competent by its charter to take, or whether they convey only such an interest as it was competent to take. We think it is reasonable to presume that the company was intending to act, and was understood by the grantors to be acting, within the scope of its corporate authority, and that it was not expending the money of its stockholders in the purchase of rights for the establishment of a commercial line of telephone, when it had no grant of authority from the state to either establish or operate such a line.

Our view upon the whole matter is that the Hepburn deeds imposed upon the lands in question only the burden resulting from such a telephone line or lines as are or may be reasonably adequate to the main purpose of constructing, maintaining and operating the pipe lines authorized by the deeds. We are not now concerned with the question whether four wires or only two wires are reasonably necessary for this purpose, although it does not seem to be disputed that four wires are necessary. It is admitted in the case that four wires were sufficient, and that the poles that stood upon the lands of the appellants at the time the respondent entered were sufficient for the support of four wires. This being so, the entry of the respondent for the purpose of cutting down the former poles and establishing larger and taller poles, with more numerous cross-arms than would be required for the support of four wires, constituted a violation of the legal rights of the appellants and a trespass upon their land; for by the terms of the deeds in question, the possession and use of the lands were reserved to the grantors, subject only to the grant, as fully as if the deeds had not been made.

This being so, we are little concerned with the question how much the practical burden of the easement is increased by the

acts of the respondent, except as the point may bear upon the request made upon the argument by respondent's counsel, that notwithstanding respondent's title be bad, the injunctions should be retained.　We are, however, unable to concur in the view of the learned vice-chancellor that the increased burden is not perceptible.　The right and interest of the owners of the fee were not treated as of little practical value when the deeds in question were given; on the contrary, those deeds reserved the right of possession and use as a right presumably of substantial value to the grantors.

If the excessive use consisted simply of the sending of additional messages, without increase in the number of wires or increase in the size or number of poles and cross-arms, it would indeed be difficult to measure the additional damage done to the owner of the fee.　In *Slingerland* v. *Newark, 54 N. J. Law (25 Vr.) 62,* Mr. Justice Dixon, speaking for the supreme court, and treating of the alleged purpose of the city to draw water through the pipe line beneath Slingerland's land for purposes other than the public use of the city, said: "It is not apparent how the prosecutor can have any legal concern with the quantity of water drawn through the aqueduct, or with the use made of so much of it as the public does not need."　This remark, of course, touched upon the propriety of allowing a private prosecutor in *certiorari* to stay condemnation proceedings undertaken against him for a public purpose, because of his objection that the proposed public work was to be used also in part for other purposes. But in an opinion delivered by the same learned justice in this court in *French* v. *Robb, 67 N. J. Law (38 Vr.) 260,* which was an action of ejectment brought to compel the removal of a pole and wires maintained by Robb in the street for the purpose of electric lighting, and where it appeared that some of the wires were used for public lighting and some for private lighting, it was said (at *p. 264*): "No color of right is shown for maintaining apparatus for private lighting, and as to the wire strung for that purpose the defendant was clearly guilty.　The plaintiff urges that the wrongful use of the pole to sustain this wire should be visited with the forfeiture of the entire right; but we find no ground for such contention.　Such a judgment

would inflict a loss upon the public for the private fault of one of its instruments. The plaintiff does not need such rigor for his protection. *So far as the appliances are not used for public purposes this suit will result in abating them; so far as those required for public purposes have been wrongfully used, the plaintiff can be compensated by an action on the case for damages, and equity will restrain their misuse in the future.*"

But, aside entirely from any question of increased burden in the present case by reason of transmitting messages through the city's wires for other purposes than those incident to the maintenance and operation of the water works, it is quite clear, we think, that the substitution of larger and taller poles, and the addition of cross-arms and wires, constitute not merely a theoretical but a practical increase in the burden upon the land. The larger pole occupies more space; the taller pole and the additional cross-arms and wires not only occupy space, but in other respects additionally burden the soil. Not to speak of other matters, and referring only to the rights assumed to be granted by the city of Newark to the New York and New Jersey Telephone Company by the deed of August 24th, 1905, above referred to, it is plain that the enlargement of the telephone line may require the further trimming of trees and the establishment of larger and more numerous guy and brace poles and anchors, and more numerous attachments of guy wires to trees.

But the appellants are not coming into the court of equity appealing to its discretion or invoking any extraordinary exercise of power by injunction or otherwise. They are not therefore required in this proceeding to show serious practical detriment to their property, irreparable or otherwise. They stand simply upon their lawful right as owners and possessors of the soil to remove from it any nuisance which may be placed thereon without their consent. And since, so far as the case shows, they have not interfered, nor threatened to interfere, with any lawful right of the respondent, no ground of injunction is shown against them.

The learned counsel for the respondent urge, indeed, that, although we hold respondent's title to be bad, we should direct the injunctions to be continued in force until compensation can

be ascertained and made, either in condemnation proceedings at law, pursuant to *P. L. 1900 p. 76 § 8* and *P. L. 1900 p. 79,* or (preferably) that the amount of compensation should be ascertained by the court of chancery. If the respondent had taken possession with the consent or acquiescence of the appellants, under an express or implied agreement for compensation, or if the appellants were appealing to the equity power for affirmative relief, terms might be imposed upon them that would require them to submit to condemnation proceedings, or even to abide by the determination of the court of equity with respect to the amount of compensation. See *Paterson* v. *Kamlah, 42 N. J. Eq. (15 Stew.) 93; 47 N. J. Eq. (2 Dick.) 331; Sparks Manufacturing Co.* v. *Newton, 57 N. J. Eq. (12 Dick.) 867, 893; 60 N. J. Eq. (15 Dick.) 399,* and *Simmons* v. *Paterson, 60 N. J. Eq. (15 Dick.) 385, 893.*

But the respondent has violated the property-rights of appellants without the least justification. The appellants are asking for no affirmative relief. There has been, so far as appears, not the least laches or acquiescence on their part. The case therefore shows no ground for the imposition of terms upon them.

It results that the decrees under review should be reversed and the bills of complaint dismissed, with costs.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF-JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, BOGERT, VROOM, GREEN, GRAY, DILL—13.