MARTIN BLAUVELT

*v.*

PASSAIC WATER COMPANY et al.

———

, CARRIE MAY DOWELL

*v.*

PASSAIC WATER COMPANY et al.

[Decided April 13th, 1909.]

1. To ascertain the intention of the parties as expressed in a deed, the court must consider the situation at the time of the execution of the deed.

2. A deed described the land by metes and bounds and referred to it as "being the triangular piece  *  *  *  lying between the lines of the old street and the proposed improvement as laid down on said map, together with the use of such portion of land in front of said triangle as was lately included in T. avenue, as formerly laid." At the time of the execution of the deed, the grantee owned land· on T. street, and the grantor owned land directly opposite. A proposed change in the street would leave a triangle on the side owned by the grantor between the line of the new street and the line of the old street. The land owned by the grantee was his homestead. At the time of the execution of the deed, the old street was in use.—*Held,* that the grantor conveyed. the fee of the triangle and the land in front of it between the triangle and the land of the grantee; the word "use" meaning entire, exclusive, complete, or any other comprehensive word expressing all of the purposes to which land can be put.

3. Where the intention in employing the word "use" in a deed is to indicate complete dominion, the word is sufficient to convey the fee.

———

By consent of counsel these two cases were tried together. Heard on bills, answers, replications and proofs in open court.

These are bills to quiet title, and the sole answering defendant is the Central Trust Company of New York. The complainants each claim to own the lands in dispute by virtue of a deed made by the Passaic Water Company to William H. Blauvelt on the 21st of May, 1873. Each of the complainants traces his title back to said William H. Blauvelt.

The deed in question, from the Passaic Water Company to William H. Blauvelt, dated May 21st, 1873, proved September 11th, 1874, and recorded December 5th, 1874, after describing a piece of land by metes and bounds, refers to it as "being the triangular piece of ground lying between the lines of the old street and the proposed improvement as laid down on said map, together with the use of such portion of land in front of said triangle as was lately included in Totowa avenue as formerly laid." The dispute arises over the question of the effect to be given to the above language from the word "together" to the end of the sentence. In 1887 the Passaic Water Company executed a mortgage to the Central Trust Company, and it is conceded that if at that time the Passaic Water Company owned the lands in dispute in this suit they were included in the mortgage. The dispute in this suit arises over the question as to what lands were conveyed by the Passaic Water Company to Blauvelt by the deed above mentioned.

Decrees *pro confesso* have been entered against all of the defendants except the Central Trust Company.

The Passaic Water Company by a subsequent deed, which it is admitted is not effective as against the mortgagees' rights, confirmed the title of Blauvelt to the *locus in quo,* reciting that it was the intention of the original deed to convey the lands.

*Mr. George S. Hilton,* for the complainant.

*Messrs. Lindabury, Depue & Faulks,* for the defendant Central Trust Company of New York.

GARRISON, V. C.

The sole question in this case, as I conceive it, is to ascertain and give effect to the intention of the parties as expressed in the

deed from the Passaic Water Company to William H. Blauvelt. To ascertain this intention it is first necessary to understand the situation at the time that the deed was made. At that time, fronting on a street then called Water street, and which previously had been called Totowa avenue and Totowa road, Blauvelt had land upon one side and directly opposite, the Passaic Water Company had land upon the other.

At the time of the drawing of the deed a plan had been projected of changing the location of the street, the result of which change would be to leave a little triangle of land upon the side owned by the Passaic Water Company between the line of the new street and the line of the old street, and the effect of the change upon the title of the parties would be to leave Blauvelt, whose homestead was erected upon his land and ran down to the edge of the street, with title, of course, to the centre of the vacated street; then would come a piece of the vacated street, the title to which would revert to the water company, and then would come this little triangle between the north line of the new street and what had been the south line of the old street. Of course, there would not be any break in the continuity of the ownership of the Passaic Water Company from the centre line of the old street out to the new street, because, by the vacation of the old street, the land, from its centre line to the line of the Passaic Water Company's other land, would revert to the water company, and it would therefore own from the centre line of the old street out to the north line of the new street. But at the time that the deed was drawn the old street was still in use and the improvement was only contemplated, and the situation which would be produced by the new street would be to leave the Passaic Water Company a peculiarily shaped piece of land intervening between the homestead and land of Blauvelt and the new street.

The draughtsman of the deed (which is badly drawn to express clearly the intention of the parties) described by metes and bounds the little triangle of land which the Passaic Water Company owned on the north side of the new street as it would be when actually laid out, and then included as part of what was

23

granted, the use of the land between such triangle and the other land of Blauvelt.

It will greatly aid in understanding the situation to here insert, as I do, two diagrams showing, respectively—*first,* the situation before the change in the street lines and before the conveyance in 1873 by the water company to Blauvelt, and *second,* the situation after the change from the old street to the new, showing the *locus in quo.*

Situation before change in street line and before conveyance in 1873 by Water Co. to Blauvelt.

Bearing in mind that at the time the deed was drawn the old street was still being used, and that the evident purpose was to bring Blauvelt out to the side of the new street the way he had previously been situated upon the old street, it is, I think, entirely clear that what was intended was to convey to Blauvelt all of the land between the north side of the new street and what he then owned. It seems to me to be absurd to believe that Blauvelt intended to buy this utterly useless little triangle of land, if, be-

tween it and what he then owned, would intervene the *locus in quo*, which the draughtsman calls "the lands in front of the triangle."

As the title stood at the time that the deed was drawn this land was in front of the triangle. From the new street, of course, it is in the rear of the triangle. But we must put ourselves in the place of the parties as of the time when the deed was drawn, and I think it, as I have above said, entirely clear that what the grantor intended to do was to convey to Blauvelt all of the land which the grantor owned from the north side of the new street up to Blauvelt's existing line, which was the centre line of the old street. He did this by describing the triangle and granting the use of the land between that triangle and Blauvelt's land.

As Blauvelt was using his land as a homestead, and the soil in front of his house was his lawn and ran down to the old street and would, of course, be continued down to the edge of the new street, the use that he intended to make of it was to have entire dominion over it; or else we have the absurdity of an adverse title to land lying right in the centre of his lawn.

When we recall that at the time the deed was drawn the old street still existed and was in use by the public, I think we have found the explanation of why the draughtsman worded the deed as he did.

The Passaic Water Company actually owned and was in possession and could deliver possession of the triangle. It was not in possession, and might never come into the possession (freed from the public use) of the land in front of the triangle and between the said triangle and the existing line of Blauvelt. I think it clear that the draughtsman considered that, under the circumstances, it would not be wise for the water company actually to describe this land in the same way that he did the land of which it was in possession, because it was still in the old street and in use and they could not deliver possession and might be liable, upon the covenants in the deed, for not doing so. His purpose was to transfer to Blauvelt all the rights that the Passaic Water Company had, both in the triangle and in the land in front of the triangle and between it and Blauvelt's line; and he thought it

safer to his client to effectuate that intention by only describing and granting by express terms that portion of the land, namely, the triangle, which was in the actual possession of the grantor, and then granting the use of the rest, which was at that time not in the possession of the grantor; his purpose undoubtedly being to grant to Blauvelt whatever use could be made of such land, and when, by vacation, entire use, that is, entire dominion, would revert, then it was the intention that Blauvelt should have that. In the deed, after the description of the triangle and the use of such portion of the land in front of such triangle as was lately in the street, there is a clause granting "all and singular the tenements, &c., with remainders, reversions, &c., and also all the estate, right, title and interest, property, possession, claim and demand whatsoever of the" (water company) "in and to the same and every part and parcel thereof." The effect of this, it seems to me, clearly is to grant to Blauvelt the interest, right, title, property, &c., of the water company in and to the "use" above described, and as that was complete fee-simple title, it was the title granted.

Being convinced, as I am, that each of the parties intended by this conveyance to vest in Blauvelt title out to the new street, I give to the word "use," as herein employed, the meaning of *entire, exclusive, complete,* or any other comprehensive word to express all of the purposes to which land can be put; in other words, I think the intention was to grant a fee, and that by the employment of the word "use," the grantor intended to grant and convey the entire use, that is to say, the entire dominion over the land.

Under the authorities, where the intention in employing the word "use" is to indicate complete dominion, the word is sufficient to convey a fee. *Fitzgerald* v. *Faunce (Court of Errors and Appeals, 1884), 46 N. J. Law (17 Vr.) 536 (at p. 596); Conover* v. *Atlantic City Sewerage Co. (Court of Errors and Appeals, 1903), 70 N. J. Law (..1 Vr.) 315 et seq.; 3 Washb. R. P. (5th ed.) 406.*

I hold that such is its meaning and effect in the present case.

I do not find it necessary to consider any of the other points

raised, because of my finding that the intention of the parties can be effectuated by the construction placed upon the language employed in the deed, and that such construction results in confirming the title of the complainants, for whom decrees will accordingly be entered.