## Lillie K. Moore

*v.*

## William Moore et al.

[Decided January 15th, 1915.]

1. Under 2 *Comp. Stat. 1910 p. 2048 § 16,* a devise to trustees for the use of the testator's widow does not of itself affect her right of dower.

2. A devise of the exclusive use of land for an unlimited term is a devise in fee.

3. A devise of the exclusive use of land for the life of the beneficiary creates a legal estate in the land.

4. A devise of the use of the testator's house and premises to his wife and children as a residence until sold by the executors, and a devise of the residue of the estate to the executors in trust to pay taxes, assessments, and water rents, and keep the property in repair, gives to the wife and children the right to occupy the premises until a sale by the executors as trustees.

5. Whether a widow can accept provisions for her benefit in her husband's will, and also receive dower, depends on the intention of the testator, ascertained by considering the entire will in the light of the circumstances and conditions surrounding him.

6. An antenuptial agreement executed in a foreign country deprived the wife, under the law of that country, of any dower right. The parties after marriage moved to New Jersey, and the husband acquired real estate there and was domiciled there at the execution of his will and his death. By his will he recognized the obligations imposed by him by the antenuptial agreement, and in addition gave to the wife the right to occupy his residence until a sale ,by the trustees. He disposed of other property to his children. No reference to any dower right to the wife was made in the will.—*Held,* that, though the husband erroneously believed that the antenuptial agreement barred the wife of her dower right to real estate in New Jersey, the will, when considered as a whole in the light of the circumstances, made provisions for her in lieu of dower, and her acceptance of the provisions barred her dower right.

7. The inaction of a widow in failing for many years to demand her dower right, but accepting, in lieu thereof, the provisions made for her by her husband's will, does not amount to a waiver or forfeiture by her of her dower right, but may be considered with the circumstances in determining whether the will made provisions for her in lieu of dower.

On final hearing on bill, answer, replication and proofs taken in open court.

*Messrs. Queen & Stout,* for the complainant.

*Mr. Richard I. McAghon, Jr.,* for the defendant William Moore.

*Mr. Raymond P. Wortendyke,* for James A. Gordon, trustee.

*Mr. John Milton,* for the defendant Muriel Lawes.

STEVENSON, V. C.

1. There is some difficulty in defining the meaning and force of the antenuptial agreement made when the parties were both domiciled in the Province of Quebec, owing to the meagre disclosure which the proofs make of the circumstances and conditions which attended the transaction. Mr. Moore is described in the agreement as the "Quebec Manager of the Quebec Steamship Company." Mrs. Moore, then Miss Kaylor, is described as "of the Town of Iberville, in the County of Iberville, in the said Province," but she is further described as "the daughter of Daniel Kaylor, . now of Tennessee, in the United States of America." The agreement bears date June 12th, 1880. Whether the parties were contemplating a change of domicile we do not know. When Mr. Moore died in 1897, he and his wife were domiciled in Jersey City. When the couple lost their residence in Quebec we are not informed.

In regard to the property of this man and woman contemplating marriage, and making a contract in view thereof relating to their respective property rights, the exhibition of the facts made by the testimony is also unsatisfactory. I think the only piece of evidence in regard to the property owned by either of these two persons consists in the statement which Mrs. Moore makes that Mr. Moore owned "a farm" in Quebec. What the value of the farm was does not appear. Whether Mr. Moore when he made this agreement settling $10,000 on his wife had any substantial amount of personal property or not we are not

informed. The testimony leaves us ignorant upon the important question whether when this agreement was made Mr. Moore had, or contemplated having, in the Province of Quebec, sufficient property to carry out the settlement which he had made upon his wife in the event of his death shortly after his marriage.

For the purposes of this case I have concluded to assume that the views set forth in the elaborate and learned brief on behalf of the complainant, in regard to the extraterritorial effect of this antenuptial contract, are substantially correct. The result is that the *douaire prefix,* provided in the agreement, which, in effect, operates as a jointure under our law, has no legal effect upon the claim to dower of the complainant in respect of lands subsequently acquired by Mr. Moore in the State of New Jersey, the married couple being domiciled in New Jersey at the time of the husband's death. The further consideration of this case, therefore, involves only the determination of the question whether Mrs. Moore having accepted for many years the provisions for her benefit contained in her husband's will, may now also have her dower in this New Jersey real estate which Mr. Moore owned at the time of his death.

. 2. Under the provisions of our Dower act (*2 Comp. Stat. p. 2048 § 16*) a hard and fast rule has been established that the devise of any legal estate in lands, however small, directly to the widow, bars her dower in the absence of any declaration in the will in regard to the matter unless she expresses her dissent to receive the devised land in a certain prescribed manner. The devise of lands to trustees for the use of the widow, however valuable the equitable estate thus vested in her may be, of itself, has no effect under the statute upon the widow's right of dower. *Van Arsdale* v. *Van Arsdale, 26 N. J. Law 404.*

Counsel for complainant in his brief states as an incontrovertible fact that the will in this case devised to Mrs. Moore no legal estate in land, but only an equitable estate, and this proposition was not controverted in the argument for the defendants. I find myself able to determine this cause without passing upon the nature of the estate in land, whether legal or equitable, which passed directly to Mrs. Moore under the terms of this will. I deem it my duty, however, to exclude the supposition that I am

conceding that under the terms of this will the widow, Mrs. Moore, did not take a legal estate in lands. While I have purposely refrained from the study of this question, and any exhaustive examination of the authorities which may control it, I shall briefly set forth herein some of the matters which may well receive consideration if the question is presented for decision in this case in the court of last resort. The third paragraph of the will gives to the testator's wife and two children "the use" of his house and premises where he resided, known as 101 Waldo avenue, Jersey City, "as a residence until the same is sold." It is well settled that the devise of the exclusive "use" of property for an unlimited term "is tantamount to a devise of the land itself in fee." *Traphagen* v. *Levy* (*1889*), *45 N. J. Eq. 448, 452; Fitzgerald* v. *Faunce* (*1884*), *46 N. J. Law 536, 596.* In the last-cited case, Mr. Justice Depue, in delivering the opinion for the court of errors and appeals, says (at *p. 597*) : "Words of license or permission to occupy, or to enjoy, or to use, are a demise of an actual estate in the lands," citing the old authorities. See, also, *Hance* v. *West* (*1867*), *32 N. J. Law 233.*

It is also well settled that where the exclusive use devised is for the period of the beneficiary's life, a legal life estate in the land is created. *Morgan* v. *Titus* (*1835*), *3 N. J. Eq. 201; White* v. *White* (*1837*), *16 N. J. Law 202; Executor of Kearney* v. *Kearney* (*1864*), *17 N. J. Eq. 59, 68, 69; Cooper* v. *Cooper* (*1897*), *56 N. J. Eq. 48.*

In the present case we have a devise of the use of a house and premises for a residence to a wife and two children jointly, and they are to enjoy this use until the land is sold. The executors are directed in the execution of the trust which the will created to sell this residence property whenever they shall think advisable, and "until such sale to pay the taxes, assessments and water rents levied against the same, and keep the said premises in repair." The matter to be investigated, in order to determine the character of the estate, or right which the widow and children took in this residence property, seems to be whether by taking all the provisions of the will into consideration a trust by implication or otherwise can be discovered in respect of the use which the widow was to enjoy. It may be argued that the duty imposed

upon the executors who are made trustees to keep the premises in repair includes the duty of entering, and in part, at least, occupying the same from time to time for such purpose.

It will be observed that the interest devised to the wife and children in this residence property in the third paragraph of the will, is not expressly affected by the subsequent devise of the rest and residue of the testator's estate to his executors in trust. All the residue of the property, after taking out this estate or right of the widow and children, and a few other items, is conveyed to the executors in trust, and it is from this residue that the taxes, assessments, water rents and expense of repairs are to be paid. The widow and children are to occupy, possibly for many years, having the exclusive benefit of the property, while the residue of the testator's estate in the hands of· his executors and trustees supplies apparently all the fixed charges with the exception of insurance. It will be observed that taxes, assessments and water rents can all be paid without the slightest interference with the "use" of the land by the widow and her children, and the residue of the estate, exclusive of the right of occupation vested in the widow and the children, is charged with supplying this money. It is in connection with these provisions that the will includes in the trust the keeping of the premises in repair. The language of the will, reduced to its simplest terms, amounts substantially to this:

"I devise the use of my house and premises known as No. 101 Waldo avenue, Jersey City, to my wife and two children as a residence until the same is sold, and I devise and bequeath all the residue of my estate, real and personal, to my executors in trust (among other objects specified) to pay the taxes, assessments and water rents levied against said residence property, and keep the same in repair."

The trust estate consists of the testator's property exclusive of what he has devised to his wife and children, viz., the use of the residence property until the same should be sold, and the portion of the testator's estate which constitutes the trust estate is charged with the expense of the repairs of the portion of the testator's estate which was excepted from the trust. There certainly seems to be a question whether the will gives the trustees any right, or imposes upon them any duty with respect to the making

of the repairs except to furnish the requisite amount of money out of the trust estate in their hands.

We have seen that the direct language of the will does not include in the trust estate the interest or right of occupation devised to the widow and children. What the trustees are to sell is the interest and estate in the residence property which passed to them. But the estate or right of occupation given to the widow and children is terminated when the trustees sell. Down to the time when the trustees sell, while the widow and children remain enjoying the use and occupation of the property, it may well be argued that their estate is legal whatever may be the exact definition of the rights and duties of the trustees with respect to keeping the property in repair. The test question is this: If a stranger had unlawfully entered the premises and dispossessed the widow and her children, who would be the party to recover possession by an action of ejectment? Could the trustees maintain such an action or should the action be brought by the widow and children as tenants in common of a legal estate, determinable upon sale of the property? As stated above, I leave this question unanswered because it was not argued, and I may add that I have not answered it finally in my own mind.

3. The last matter to be considered is whether the will evinces an intention that the provisions for the widow are in lieu of dower. My conclusion is that it does.

Whether a widow can accept provisions for her benefit in her husband's will, and also receive her dower in his real estate, is determined by the intention of the testator which is to be ascertained in the usual way by reading the will from the four corners, and considering all its provisions in the light of the circumstances and conditions which surrounded and necessarily influenced the testator in forming his testamentary purposes, and in using language directing the carrying out of those purposes. The older English decisions, based upon the policy of saving the dower of the widow, if possible, and for this purpose resorting to "numberless refinements and distinctions" (per Chancellor Vroom in Stark v. Hunton (1831), 1 N. J. Eq. 216, 226), have not been followed in New Jersey, and their original force in England has been largely abrogated by statute. "Express words of

exclusion are not necessary in a will in order to bar dower."
*Stark* v. *Hunton, 1 N. J. Eq. 224.* The trend of our New Jersey
decisions, as indicated in our law and equity reports, has con-
stantly been toward the establishment of a natural and common
sense method of determining this question whether a testator has
intended that what he gives his widow in his will is to be in addi-
tion to her dower or in lieu of her dower. In ascertaining the
testator's intention it is of prime importance to ascertain whether
the allowance of dower to the widow will "disturb" or be "incon-
sistent" with any of the provisions of the will. The whole law
on this subject can, I think, be found by reference to the follow-
ing cases: *Stark* v. *Hunton, supra; Morgan* v. *Titus, supra;
White* v. *White, supra; Colgate's Executors* v. *Colgate (Chan-
cellor Zabriskie, 1873), 23 N. J. Eq. 372, 378, 380; Stewart* v.
*Stewart (Chancellor Runyon, 1879), 31 N. J. Eq. 398, 408, 409;
Griggs* v. *Veghte (Vice-Chancellor Green, 1890), 47 N. J. Eq.
179, 184; Cooper* v. *Cooper (Vice-Chancellor Pitney, 1897), 56
N. J. Eq. 48, 54, 55.*

We have in the first place the antenuptial agreement made
while the parties were domiciled in Quebec, which, under the
Quebec law, it is conceded displaced all right of the wife to any
part of the estate of the husband, in case she survived her hus-
band, except the right to enjoy the income of this settlement of
$10,000, including the right to dispose of one-half of that sum
by her will. Mr. Moore, when he made his will a few days before
his death, recognized the binding force of this obligation, and
he provides for the exact carrying out of his obligation by his
executors. At the commencement of his will, after a brief direc-
tion that his debts are to be paid, this testator directs his execu-
tors and trustees to invest $10,000 in securities and hold the
same

"in trust in accordance with the provisions of the marriage settlement
between me and my wife Lillie, and pay to her the income of said securities
as provided in said settlement, and my wife shall have the right to dispose
of one-half of said securities by will as provided in said settlement."

It seems, to say the least, highly probable that Mr. Moore re-
ceived no information which led him to suspect that the marriage
settlement which he was causing scrupulously to be carried out

on his part by his executors, had lost all its efficacy to protect his estate against a further demand for dower. The will was not made when the parties were domiciled in Quebec; it was made when the parties were domiciled in Jersey City, when the husband's real estate consisted of lands in the State of New Jersey. If the husband did not know that the marriage settlement no longer barred the wife's right of dower in the after-acquired New Jersey lands—if, when he made his will, he supposed that it was his duty to complete the settlement of $10,000 for the benefit of his widow, according to his engagement, and that anything else that he gave his widow in his will was an additional benefaction, then it was not the intention of this will that the wife should have both the additional benefactions and her right of dower in the real estate. In other words, the additional benefactions come from a testator who supposes that his widow, to whom he is giving them, cannot maintain any claim to dower.

It must be conceded that there is a process of artificial reasoning which leads in a different direction, starting out with the presumption in large numbers of cases absolutely false in point of fact, that testators know the law. This presumption, when applied to the construction of wills, has, in my opinion, in many cases resulted in substituting for an illegal and therefore ineffectual testamentary purpose of the testator, a legal purpose which he never intended, and which he would have in all probability repudiated if it had been suggested to his mind. To assume that this testator, who was not a lawyer, knew of the principle of private international law of comparatively rare application, which might be deemed to render the bar to dower established by the Quebec settlement ineffectual as to lands afterwards acquired in New Jersey, would, it seems to me, involve a substitution of technical and verbal reasoning for common sense. The lawyer who drew Mr. Moore's will, and who is the surviving executor and trustee, testified without objection that he had proceeded during all the years of his administration of the estate on the supposition that the antenuptial agreement, and "the provisions of the will expressly referring to it," were in lieu of dower.

The provision which the will makes for the residence of the

widow, in my opinion, very strongly indicates that the testator thought the widow had no right of dower, and, moreover, these provisions seem to me to be inconsistent with any right of dower. The real estate, as we have seen, consisted of this residence property worth about $7,500, an old house standing on two lots which yielded hardly enough rent to pay its fixed charges, and two tracts of farm land, aggregating about thirty-three acres, adjacent to each other, one being situate in Rahway and the other in the township of Woodbridge. From the undisputed testimony of the surviving trustee, it is very plain that the dower of the widow in the lands other than the residence property on Waldo avenue, would be of little, if any, value to her. If this will therefore contemplates that the widow shall enjoy the provisions for the maintenance of her residence, and also her right of dower, we have this result, that the widow may have set off one-third of the Waldo avenue property as her dower, and then jointly with her children, have the use of the remainder of the Waldo avenue property during her widowhood until such time as the trustees should deem it advisable to sell that property and invest the proceeds in another residence for the widow and children. But how could the trustees hope to sell this property and carry out the scheme of the will for the benefit of the widow, if the widow maintained her right of dower? Is it not plain that the testator contemplated that there was no dower? We cannot suppose that making his will as he did with the aid of competent counsel, he left his whole scheme, which included the possible or probable sale of the widow's residence and the procurement of another, dependent upon her being willing to join in the scheme and release her right of dower by an appropriate conveyance.

The fact that this testator provided for the sale by his trustees of this residence property without making the slightest reference to any dower right of his wife, indicates that such sale would be made free of dower. *Cooper* v. *Cooper, supra.* In this case Vice-Chancellor Pitney expresses the following views (at *p. 55*) :

"Some of the older English cases, and perhaps a few in this country, have held that a direction to executors to sell and convey real estate, did not necessarily indicate that they were to sell free and clear of the dower of the widow. But the modern de-

cisions which, in my judgment, are more in accordance with common sense, tend to hold that a power and direction to sell and convey necessarily includes the idea of conevying the title free and clear of dower. Except sales of real estate by sheriffs on common law judgments, the cases where a sale of real estate is made by a husband without his wife joining him are very rare indeed. Ordinary purchasers will not accept a title with an outstanding inchoate dower upon it, much less one that has dower fastened upon it by the death of the husband. Such a title is not marketable, in the ordinary sense of that word."

I think there is a further indication of the intention of the testator in the provisions that the trustee should convey the Rahway tract and the Woodbridge tract and the Newark avenue property to the children, at the times and in the manner set forth in the will. While a dower right of the widow in these properties, as I have said, would be of very little, if any, value to her, the existence of such a right would greatly impair the value of what these children would get, for reasons which are indicated in the passage quoted above from the opinion of Vice-Chancellor Pitney.

It may be noted that the complainant, Mrs. Moore, apparently acquiesced in what I have found to have been the testator's scheme, and for about fifteen years received the income of the $10,000 settled upon her. She resided also in the Waldo avenue property for a number of years until she remarried and went to Canada. The Rahway property and an undivided one-half of the residue of the testator's real estate were conveyed by the surviving trustee in accordance with the provisions of the will to the testator's son William Moore, when he attained the age of thirty years, in May, 1911, and it does not appear that the complainant made any claim until shortly before this bill was filed in 1912, that she had any dower in that parcel of land or in any other real estate of her deceased husband. The evidence indicates, I think, that not only the testator but his trustees and his family all understood and acted upon the firm belief that the provisions of the antenuptial agreement and of this will were in lieu of dower. Of course, this inaction of the widow does not amount to a waiver or forfeiture of any right which she held, and of

which she was unaware, but it is conduct which I think may be taken into consideration with the conduct of all the other parties concerned in determining whether this uniform and consistent construction of the will, accepted by all parties interested, must, after fifteen years, be disregarded.

A decree will be advised dismissing the bill.