Complainant sustained a fall and consequent injuries on June 10th, 1937. She brought suit in the Supreme Court against several defendants, but on the eve of the trial allegedly discovered that she had not joined as a defendant the Pennsylvania-Reading Seashore Lines, which company complainant alleges was the owner of the locus in quo at the time of her fall and, therefore, liable in damages. Upon discovery of this alleged state of facts, complainant, on October 28th, 1940, commenced an action against the defendant, Pennsylvania-Reading Seashore Lines, in the law courts of this state, whereupon counsel for the defendant moved to strike the bill of complaint on the ground that it was apparent on the face thereof that the action against the defendant was barred by the general statute of limitations, as well as by a special statute relating to actions against railroad companies operating railroads in this state. The present complainant seeks to enjoin the defendant from interposing the statutes aforesaid as a defense to her action at law. The basis of her claim to equitable relief is fraud on the part of the defendant, which induced complainant to believe that defendant was not the owner of nor did it have any interest in the place where the accident happened, with the result that complainant was in ignorance of the true fact that defendant was not only interested in the property but was, in fact, the owner thereof.
Complainant relies, in part, upon a letter of August 19th, 1937, from defendant's claim attorney to counsel for complainant, wherein defendant's attorney said:
"After thoroughly investigating this matter we find that the place of accident is not on property of this company, therefore it is not a claim for this company to handle."
If, in fact, the defendant company was not the owner of the property on which the accident occurred, complainant is *Page 532 
not entitled to relief, and the answer to this question depends upon the construction of the deed dated August 4th, 1922, from The Pleasantville and Atlantic Turnpike or Plank Road Company to the West Jersey and Seashore Railroad Company.
It is conceded that on June 30th, 1930, the West Jersey and Seashore Railroad Company leased to the Pennsylvania Railroad Company all of its right, title and interest to the locus inquo under a 999-year lease, and that the Pennsylvania Railroad Company assigned its interest to the Atlantic City Railroad Company in January of 1933 and that Pennsylvania-Reading Seashore Lines succeeded to those rights by merger and change of name, and if the deed of conveyance from the Plank Road Company to the West Jersey and Seashore Railroad Company was a conveyance in fee as to the second parcel described in said deed, it is conceded that the accident happened on property contained within the description of said tract 2, and that if the deed aforesaid conveyed a fee, Pennsylvania-Reading Seashore Lines succeeded to that fee and was the owner of the locus in quo at the time of the accident.
Did the deed of August 4th, 1922, convey the fee to the West Jersey and Seashore Railroad Company or merely an easement? In the determination of this question, certain facts should be adverted to.
Complainant's fall happened by contact with a concrete base formerly supporting a battery box, which is part of a signal system constructed and maintained by the Atlantic City and Suburban Traction Company on its right of way, which right of way crossed the lands described in parcel 2 of the deed aforesaid. The tracks of the Suburban Company were laid about the year 1902, pursuant to an agreement between the Turnpike Road Company and the Surburban Traction Company, dated August 5th, 1902, and the battery box in question was used, since 1912, as a part of the Traction Company's system to afford protection to the crossing for the West Jersey and Seashore Railroad trains over the trolley line.
The testimony clearly shows that the West Jersey and Seashore Railroad Company never exercised any control over the *Page 533 
battery box or over the system of which it was a part, but that the maintenance and control thereof was at all times in the Traction Company.
At the time of the execution of the deed from the Plank Road Company to the West Jersey and Seashore Railroad Company aforesaid, the Plank Road Company had constructed and had maintained and operated for many years a turnpike or toll road across tract 2, and was maintaining and operating said road at the time of the conveyance, so that pedestrians and vehicles crossed and recrossed said tract for the purpose of coming from Pleasantville to Atlantic City, or vice versa.
No tracks for railroad purposes were ever constructed over, across or on tract 2 by the West Jersey and Seashore Railroad Company or any of its successors in interest.
The deed in question discloses that it dealt with two separate and distinct tracts of land and there is no question but that the lands first described in the said deed conveyed the fee to the West Jersey and Seashore Railroad Company and that the lands so as aforesaid first described did not include any land which was then in use by the Pleasantville Turnpike and Plank Road Company for its toll road, nor did it include any of the lands used by the Traction Company for its trolley line roadbed.
The lands embraced within the second description are, as heretofore said, within the boundaries of that portion of the old turnpike or plank road as it was opened, used and occupied by the Turnpike Company as of the date of the conveyance, and the tracks of the Suburban Traction Company were also located across said tract 2.
The fact is that had the West Jersey and Seashore Railroad Company received a conveyance of the fee to tract 2 and not a mere easement of way for its railroad tracks, c., and being such owner, fenced in that tract, the turnpike would have been entirely blocked off from any use, either to the Turnpike Company or the public. The grant to the West Jersey and Seashore Railroad Company would have been subject to the rights of the Suburban Traction Company to use the turnpike and the public toll road would have become extinct and the passage over it from Pleasantville to Atlantic City absolutely prevented. *Page 534 
Complainant relies on Fitzgerald v. Faunce,46 N.J. Law 536, in which case the court held that a grant of the exclusive use of lands, as it excludes the grantor from all benefit in it, is a grant of the soil itself, and not a mere easement. As said by the Court of Errors and Appeals in Conover v. Atlantic CitySewerage Co., 70 N.J. Law 315 (at p. 322); 57 Atl. Rep. 897:
"There [referring to the deed to Faunce] the `sole right, privilege, use and enjoyment for purposes of fishing' was annexed to a lot of land particularly described and conveyed as such, and the intent was plainly expressed to confer this privilege, together with and as part of the soil and land itself."
In the case sub judice, the grant in fee contained in the first part of the deed refers to a separate and distinct parcel of land containing 1,625 square feet and concludes with a general warranty of title and in effect constitutes what is commonly known as a general warranty deed. Then follows that part of the deed which refers to a separately described lot of land containing 1,592 square feet, and the granting clause reads as follows:
"And the said party of the first part, for the consideration aforesaid, has granted, bargained and sold, and by these presents does grant, bargain and sell unto the said party of the second part, its successors and assigns, the full right, liberty and privilege of laying down, erecting, constructing, and forever establishing, operating and using a railroad with one or more tracks, with the necessary appurtenances, appliances and devices, through, over and upon,"
(Then follows the description of the property by metes and bounds).
Following the description of the property is the following language:
"Together with the free right and privilege of passing at all times hereafter, forever, over, through and along the same with or without locomotives, passenger, freight, baggage, mail or other cars,"
and then the deed provides that the rights and privileges aforesaid conveyed are subject to the rights of the Atlantic *Page 535 
City and Suburban Traction Company under an agreement between it and the Turnpike Company, and the deed then concludes:
"To have and to hold all and singular, the rights, liberties and privileges above described and hereby granted, or mentioned and intended so to be, with the appurtenances, unto the said party of the second part, its successors and assigns, to and for the only proper use and behoof of the said party of the second part, its successors and assigns, forever, subject as aforesaid."
The language of this part of the deed, it will be noted, is apt to convey an easement and not a fee in the land, and it will be further noticed that the language used in this part of the conveyance is entirely different from that conveying the fee of tract 1.
The habendum in the grant of tract 1 is that usual in the grant of a fee. The habendum in tract 2 is not "to have and to hold" the premises described, with the appurtenances, as it is in tract 1, but "to have and to hold, all and singular, the rights, liberties and privileges above described."
In Jordan v. Teaneck Township, 5 N.J. Mis. R. 557;137 Atl. Rep. 580, the habendum after the grant "to use and occupy" for railroad station purposes the land particularly described, was "to have and to hold the same," i.e., the land described "for said uses and purposes."
In the Jordan Case, that which the grantee was to have and to hold was the land granted and conveyed, but the deed for tract 2 in the instant case differs from the habendum in the JordanCase in that that which was to be had and held was not the land described in the deed, but the "rights, liberties and privileges" granted therein.
It is argued that if the Plank Road Company intended to reserve the right to possession and use of the premises for its plank road, a provision similar to that in the deed under consideration in Northeastern Tel. and Tel. Co. v. Hepburn, 73 N.J. Eq. 657;69 Atl. Rep. 249, would have been inserted in the deed. Undoubtedly it would have been better so to have done, but that it failed so to do means nothing if "by apt and proper words" an easement and not a fee was created by the deed. *Page 536 
In the Hepburn Case, supra, the court said: "Though, in construing deeds, the question is not what interest did the grantor intend to pass, but what interest did he pass by apt and proper words, and though extrinsic evidence, except such as throws light upon the circumstances and subject-matter, is to be disregarded, still the construction of a deed should be in conformity with the intention of the parties whenever the law will permit."
So herein, the court must, in construing the deed, do so in light of the circumstances that the land in tract 2 was in the possession of and necessary for the use of the Plank Road Company at the time of the conveyance to the Railroad Company.
The conveyance of tract 2 was not an exclusive use of the lands as it was in the Fitzgerald v. Faunce Case, supra. The Traction Company had a prior right of limited user for its roadbed and track and certainly the grantor, the Turnpike Company, did not intend that it should be excluded from continuing to use the lands in question as a part of its right of way for its toll road.
The grant in the Faunce deed was of the "sole" use for fishing, thereby excluding the grantor from that right. The grant to the West Jersey and Seashore Railroad Company was "the full right" of laying, constructing, operating and using a railroad with one or more tracks, c., "through, over and upon" the described lands, which user was in conjunction with the Trolley Company and that of the grantor for its plank road.
Certainly any construction other than as above could not possibly be said to carry out the evident purpose of the grantor in its conveyance to the West Jersey and Seashore Railroad Company, and manifestly the West Jersey and Seashore Railroad Company desired a different form of grant with respect to the second tract than that which it was receiving with respect to the first tract.
In the construction of deeds, as in wills, the intention of the parties is to be carried out if the law will permit.
In Cadgene v. Cadgene, 17 N.J. Mis. R. 332; 8 Atl. Rep.
2d 858; affirmed, 124 N.J. Law 566; 12 Atl. Rep. 2d *Page 537 635, the Court of Errors and Appeals, quoting from Havens v.Sea Shore Land Co., 47 N.J. Eq. 365; 20 Atl. Rep. 497, said:
"A deed should be so construed as to give effect to the intention of the parties, if by law it may; and if the intention of the parties cannot be carried out in the way they intended, and the law will permit it to be carried out in another, that other should be adopted."
The language above quoted was taken from Sheppard'sTouchstone.
To like effect was Northeastern Tel. and Tel. Co. v.Hepburn, supra; Blauvelt v. Passaic Water Co., 75 N.J. Eq. 351; 72 Atl. Rep. 1091.
The distinction herein made between the effect of the conveyance herein under consideration and that of the deed in theFitzgerald v. Faunce Case has also been apparent in other cases which have heretofore been under consideration of the courts. See Conover v. Atlantic City Sewerage Co., supra;Delaware, Lackawanna and Western Railroad Co. v. Breckenridge,55 N.J. Eq. 141; 35 Atl. Rep. 756; Moore v. Moore, 84 N.J. Eq. 39; 92 Atl. Rep. 948; Blauvelt v. Passaic Water Co., supra.
The result of the foregoing findings is a dismissal of the bill of complaint, and this without the necessity of passing on the other questions raised by the pleadings.