25 N.J. Super. 135 (1953)
95 A.2d 617
WILLIAM C. JEFFERSON AND DOROTHY C. JEFFERSON, HIS WIFE, PLAINTIFFS,
v.
WILLIAM C. DAVIS, INDIVIDUALLY AND/OR AS TRUSTEE FOR JOHN S. DIOSZEGI, JR. AND IRENE DIOSZEGI, HIS WIFE; CHARLES F. WIGGINS, JR. AND RUTH J. WIGGINS, HIS WIFE; HERMAN GUSTAV BUHLER AND GENEVIEVE EARLING BUHLER, HIS WIFE; NORMAN MAC GAULT AND MILDRED E. GAULT, HIS WIFE; LEONARD D. WARREN AND ANNA MAE WARREN, HIS WIFE; ARTHUR M. BROWN AND IRENE D. BROWN, HIS WIFE; GEORGE F. LEUPOLD AND SOPHRONIA D. LEUPOLD, HIS WIFE; JAMES O. LOCKWOOD AND DOROTHY LOCKWOOD, HIS WIFE; AND CHARLES H. GRASER AND HELEN E. GRASER, HIS WIFE; THE TOWNSHIP OF HADDON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; AND JOHN S. DIOSZEGI, JR. AND IRENE DIOSZEGI, HIS WIFE; CHARLES F. WIGGINS, JR. AND RUTH J. WIGGINS, HIS WIFE; HERMAN GUSTAV BUHLER AND GENEVIEVE EARLING BUHLER, HIS WIFE; NORMAN MAC GAULT AND MILDRED E. GAULT, HIS WIFE; LEONARD D. WARREN AND ANNA MAE WARREN, HIS WIFE; ARTHUR M. BROWN AND IRENE D. BROWN, HIS WIFE; GEORGE F. LEUPOLD AND SOPHRONIA D. LEUPOLD, HIS WIFE; JAMES O. LOCKWOOD AND DOROTHY LOCKWOOD, HIS WIFE; AND CHARLES H. GRASER AND HELEN E. GRASER, HIS WIFE, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided February 4, 1953.
*137 Mr. Herbert Richardson, attorney for plaintiffs.
Mr. S. Lewis Davis for defendants William C. Davis, et als. (Messrs. Starr, Summerill & Davis, attorneys).
*138 Mr. Emory S. Kates, attorney for defendant Township of Haddon.
HANEMAN, J.S.C.
Plaintiffs herein seek to set aside and have cancelled a certain certificate of redemption from tax sale issued by the collector of taxes for the Township of Haddon, and to have the tax sale certificate reinstated as a valid and subsisting lien. The ground upon which this relief is demanded is that the defendants are not such persons who were entitled to redeem under R.S. 54:5-54, which reads as follows:
"The owner, mortgagee, occupant or other person having an interest in land sold for municipal liens, may redeem it at any time within two years from the date of sale, or at any time thereafter until the right to redeem has been cut off in the manner in this chapter set forth, by paying to the collector, or to the collector of delinquent taxes on lands of the municipality where the land is situate, for the use of the purchaser, his heirs or assigns, the amount required for redemption as hereinafter set forth."
The individual defendants allege that they are (1) the owners of the premises involved, and (2) were, in any event, the occupants of the premises at the time of redemption and hence entitled to redeem.
The facts in connection herewith are as follows:
In 1813 one Samuel Webster, of the then Township of Newton, County of Gloucester and State of New Jersey, was the owner of a large plantation, including a grist mill, mill pond site, dam, raceway and mill pond. The said pond was completely surrounded by lands owned by him. He departed this life in that year leaving a last will and testament, under the terms of which he divided his plantation into three parts, devising one part to each of his three sons, Isaac, Samuel and Josiah. We are here concerned only with the devise to Josiah Webster, to whom the defendants trace their title. The said will, so far as here pertinent, reads as follows:
"I give and devise unto my son Josiah all the residue of my Plantation with the Grist Mill, Buildings, and appurtenances; also *139 the Four acres of land excepted off the Tract given to my son Isaac; and together also with all the lands flowed by the Mill Pond when a full head of water is raised, * * *."
For the sake of brevity, here follows a map of said premises, with various notations of the devolution of title thereon, hereafter explained.

*140 The lands designated "Pond" Plot C were sold by the Township of Haddon for the failure to pay taxes. The plaintiffs are the holders of the tax sale certificate.
The defendants assert that the title to said pond is vested in them as successors to Josiah Webster by mesne intervening conveyances. They do not base their title on a conveyance to the "edge" or "bank" of the pond, but assert that there was an express conveyance by description of said lands. They contend that they are the "owners" of the locus in quo.
The plaintiffs contend that the said Josiah Webster did not divest himself of title to the submerged land in the pond by any conveyance, but that at the most he granted an easement in the water for use at the mill and that, therefore, the defendants are not the owners as aforesaid.
Under the defendants' first claim of right to redemption it is necessary to examine and interpret certain conveyances in order to ascertain the intention of the parties thereto and to determine whether defendants are the owners thereof. In reaching a conclusion we must keep certain basic principles in mind.
It must be recognized at the outset that the property rights to water flowing land and the land thus submerged are separate and distinct and may be separately held and separately transferred. The rights to the waters of a pond are separable from submerged soil and may be acquired distinct from the ownership of the soil, by grant or prescription. An easement could therefore be created in the water flooding the land and the use thereof, and the owner of such land could retain the freehold therein. Cobb v. Davenport, 32 N.J.L. 369 (Sup. Ct. 1867); Perrine v. Bergen, 14 N.J.L. 355 (Sup. Ct. 1834); Conover v. Atlantic City Sewerage Co., 70 N.J.L. 315 (E. & A. 1903); Walden v. Pines Lake Land Co., 126 N.J. Eq. 249 (E. & A. 1939).
In construing deeds, the question is not what interest did the grantor intend to pass but what interest did he pass by apt and proper words. The intention of the parties must, however, be given effect so far as the words of the grant permit. Koplowitz v. Central Trust Co. of N.Y., 135 *141 N.J. Eq. 552 (Ch. 1944), Northeastern Tel. & Tel. Co. v. Hepburn, 73 N.J. Eq. 657 (E. & A. 1907).
In view of the conclusions hereafter set forth, it will be necessary to advert only to the first three conveyances following the death of and devise by Samuel Webster. They were dated March 25, 1814, July 18, 1814 and August 13, 1814.
On the 25th day of March, 1814 the said Josiah Webster and Beulah, his wife, conveyed the premises above devised to the said Josiah Webster to one Isaac Adcock, and provided, in part, in said deed, insofar as here material, as follows:
"* * * by these presents they the said Josiah Webster and Beulah his wife do freely clearly and absolutely grant bargain sell enfeoff release convey and confirm unto the said Isaac Adcock his heirs and assigns all the following described tract of Land Plantation Grist Mill and Mill Pond and the priveleges of raising the Mill Pond and all his rights appurtaining to the raising and flowing of the Mill Pond situate and lying in the Township of Newton aforesaid and is bounded as follows:
There follows a metes and bounds description of the parcel of land designated A on the above plan, succeeded by the following language:
"And one other piece of land for the purposes and use of the Mill dam Begins at a stake by the South side of the Mill Race a little below the flood gates thence South seventeen degrees East four chains and seventy five links to a Stone in the line of Samuel Eastlack's land; thence by Isaac Websters land North thirty nine degrees and thirty minutes East four chains and eight links thence by Isaac Websters land North twenty one degrees West fifty six links to the edge of the Mill Pond, thence down the same the several courses thereof by the dam and Race bounded by a full front of water to the place of beginning [The lands here described are designated B on the foregoing plan] containing in both of the said Pieces of land fifty five acres, strict measure (which said fifty five acres of land Grist Mill dam and pond and the privileges of the Mill Pond, is a part of the land devised to the said Josiah Webster late of the County of Gloucester deceased reference to the said Will as will at large appear) together with all and singular the courses Grist Mill Water works mill dam and Mill Pond water courses woods ways mines minerals emoluments hereditaments privileges improvements and all things thereto belonging or in any wise appurtaining as a part or parcel thereof and all the estate right title interest property feoffment claim and demand whatsoever of them the said Josiah Webster and Deulah his wife either in law or equity of in to or out of the same *142 to have and to hold the said lands Grist Mill Mill dam and Mill Pond as above described and every part and parcel thereof unto the said Isaac Adcock * * *."
On July 18, 1814 the said Isaac Adcock and Martha, his wife, reconveyed the said premises to the said Josiah Webster by deed containing the following phraseology:
"* * * have given granted bargained sold aliened enfeoffed conveyed and confirmed and by these presents do give grant bargain sell alien convey and confirm to the said Josiah Webster and to his heirs and assigns for ever all the following described tract of Land Plantation Grist Mill and Mill Pond and all the priveleges of raising the Mill Pond and all his rights appurtaining to the raising and flowing of the Mill Pond situate and lying in the Township of Newton aforesaid and is bounded as follows * * *."
There follows the two identical particular metes and bounds descriptions of lands contained in the prior deed from the said Webster to the said Adcock.
Following the description of the said second parcel the said deed reads as follows:
"* * * containing in both of the said Pieces of Land fifty-five acres strict measure together with all and singular the profits priveleges and advantages with the appurtenances to the same belonging or in any wise appurtaining also all the estate right title interest property claim and demand whatsoever of the said Isaac Adcock of in and to the same and of in and to every part and parcel thereof."
On August 13, 1814 the said Josiah Webster and wife conveyed the said premises to one John Stratton and Moses Lippincott by deed containing the following phraseology:
"* * * have granted bargained sold aliened enfeoffed conveyed and confirmed and by these presents do grant bargain sell alien enfeoff convey and confirm unto the said party of the second part and to their heirs and assigns all the following described tracts or pieces of land situate in the Township of Newton in the County of Gloucester and State of New Jersey and is bounded as follows * * *."
There follows again the identical metes and bounds descriptions of lands contained in the two foregoing conveyances, succeeded by the following phraseology:
*143 "* * * containing in both of the said Pieces of Land fifty five acres of land, strict measure on which tracts are conveyed a dwelling house and out houses a Grist Mill and Mill Pond with their appurtenances also the right and priveleges of raising the water in said Mill Pond agreeable to a written article executed between the parties this day being the same premises conveyed by Josiah Webster and Beulah his wife by one indenture duly executed dated the twenty fifth day of March last past and recorded in the Clerks office of Gloucester County in lib T of Deeds folio 374 to Isaac Adcock of the County of Cumberland in fee and by the said Isaac Adcock and Martha his wife reconveyed to the said Josiah Webster in fee by deed duly executed and dated the eighteenth day of July last past which said tracts of land and appurtenances above mentioned are now conveyed or intended to be by the said party of the first part unto the said parties of the second part in severalty as tenants in Common and not as joint tenants and in fee. Together with all and singular the buildings improvements rights liberties priveleges hereditaments and appurtenances to the same belonging or in any wise appurtaining and the reversion and reversions remainder and remainders rents issues and profits thereof and of every part and parcel thereof. And also all the estate right title interest property feoffsion claim and demand whatsoever both in law and equity of the said party of the first part of in and to the said premises with the appurtenances. To have and to hold the said premises with all and singular the appurtenances unto the said parties of the second part, their heirs and assigns to the only proper use benefit and behoof of the said party of the second part their heirs and assigns forever."
In order for the defendants to succeed upon their claim of ownership it is necessary that they demonstrate that the said Josiah Webster divested himself of the title to the land in question, i.e., under the pond, by one of the two foregoing deeds signed by him and his wife.
In the original conveyance from Josiah Webster to Isaac Adcock the granting clause generally described the land to be conveyed as "Land, Plantation, Grist Mill and Mill Pond, and the privileges of raising and flowing of the Mill Pond and all his rights appurtaining to the raising and flowing of the Mill Pond." If the defendants are to succeed it must be by virtue of this general description, the pond not being included in the land particularly described. It must be determined what significance should be attached to the word "pond," i.e., whether the intent was the grant of a fee or easement. The word "pond" has itself no legal connotation *144 or significance. It may be used to denote an easement in the water or a fee in the submerged land. Further analysis of the deed must be had to determine the sense in which it was here used.
As far as possible, effect is to be given, in construing descriptions in deeds, to both the general and particular or specific descriptions. Where, however, the general and particular descriptions of the land purporting to be conveyed are conflicting or repugnant to each other, the particular description will prevail over the general description, unless an intent to the contrary is otherwise manifested in the instrument. Weart v. Rose, 16 N.J. Eq. 290 (Ch. 1863); Conover v. Wardell, 22 N.J. Eq. 492 (E. & A. 1871); Havens v. Sea Shore Land Co., 47 N.J. Eq. 365 (Ch. 1890); 16 Am. Jur., sec. 288, p. 600; 26 C.J.S., Deeds, sec. 100 (j), p. 364; 6 Thompson on Real Property, secs. 3273, 3274, p. 443.
For defendants to succeed it would be necessary to find that Josiah Webster had divested himself of title to all the lands received by devise from his father, since it is stipulated that the above deeds either conveyed all of said lands, including the pond, or conveyed only the lands encompassed by the metes and bounds description, retaining title to the lands in the pond but granting an easement thereover.
In the second description contained in the original deed from Josiah Webster to Isaac Adcock, the last few courses are as follows:
"thence by Isaac Websters land North twenty-one degrees West fifty six links to the edge of the Mill Pond, thence down the same the several courses thereof by the dam and race bounded by a full front of water to the place of beginning." (Italics supplied.)
Had Josiah Webster intended to convey the fee to the land under the pond he could have followed the several courses thereof in an easterly direction along the edge of the pond and the northerly line of lands of Isaac Webster (D on the above plan) to the line from the lands of Samuel Webster (E on the above plan), thence in a northerly direction *145 in and along said line, and have continued in a westerly direction, following the course in the westerly line of the said Samuel Webster. This omission to so describe the lands under the pond itself, and the reference to the course in and along the edge of the end of said pond forces the conclusion that it was not intended to convey the fee of the entire pond.
The deed from Josiah Webster to Isaac Adcock as well refers to the lands thereby conveyed as "a part of the land devised to the said Josiah Webster." The defendants contend that by this conveyance all of the lands devised to Josiah were conveyed to their predecessors in title. This is inconsistent with the statement that said lands so conveyed were only a part of those devised.
There are three rules applicable to the construction of instruments in writing: (1) if the recitals are clear and the operative part is ambiguous, the recitals shall govern; (2) if the recitals are ambiguous and the operative part is clear, the operative part must govern; (3) if both the recitals and the operative part are clear but inconsistent with each other, the operative part is to be preferred. Bellisfield v. Holcombe, 102 N.J. Eq. 20 (Ch. 1927). The recital may be used to discover the intention of the parties. Monks v. Provident Inst., 64 N.J.L. 86 (Sup. Ct. 1899).
There being an ambiguity in the granting clause, the recital may be referred to, in order to ascertain the intention of the parties. The recital here is clear and unambiguous.
The natural conclusion from these words is that Josiah was retaining title to some portion of the lands devised to him by his father. There is no doubt that plots A and B on the above map were conveyed by particular description. This leaves in the grantor title only to such lands as were so devised to him as were not particularly described in this deed. These lands are the submerged pond lands. It is to be concluded, therefore, that he intended to retain his title and not divest himself of title thereto.
It would therefore appear plain, by the use of this expression as well, that Josiah Webster intended to convey in fee only the lands inherited from his father (designated A *146 and B on the above plan) which were no portion of the pond, and as to the latter, that he was merely granting an easement.
Considering the particular description and the general description in the light of this recital, and all of the facts actually here present, it must be concluded that the grantor here did not intend to convey a fee to the land submerged by the pond.
We are further strengthened in this conclusion by an examination of the clause which follows the recital. It is there to be noted that the grantor stated, after the particular description:
"* * * together with all and singular the courses Grist Mill Water works mill dam and mill pond water courses woods ways mines minerals emoluments hereditaments priveleges improvements and all things thereto belonging or in any wise appurtaining as a part or parcel thereof and all the estate right title interest property feoffment claim and demand whatsoever of them the said Josiah Webster and Beulah his wife either in law or equity of in to or out of the same to have and to hold the said lands Grist Mill Mill dam and Mill Pond as above described and every part and parcel thereof unto the said Isaac Adcock * * *."
The use of the words "together with" demonstrate that here the grantor did not intend to enlarge the description, but rather intended to grant to the grantee the easements, profits a prendre or usufructs appurtenant to the lands specifically described. These rights are enumerated following immediately after the description and are joined by the words "together with," words importing a close and inseparable union with what precedes. Mitchell v. D'Olier, 68 N.J.L. 375 (E. & A. 1902); Northeastern Tel. & Tel. Co. v. Hepburn, 73 N.J. Eq. 657 (E. & A. 1907).
An examination of the words used in this phrase reveals that in no instance did Josiah Webster exhibit an intent to convey more than the "emoluments, hereditaments, privileges, improvements and all things thereto belonging or in any wise appurtaining as a part or parcel thereof" to the lands specifically described. The use of the two phrases "courses, grist mill, water works, mill dam and mill pond *147 water courses" serve plainly to describe an easement. A water course is a channel or canal for the conveyance of water, and water having run in the same course for more than twenty years, under a case properly made, may give rise to an easement in such water course by virtue of prescription. It can as well arise by express grant. The use of the words "water course" or "ditch" does not connote a conveyance of the fee in land but rather an easement. Conover v. Atlantic City Sewerage Co., 70 N.J.L. 315 (E. & A. 1903); Mancini v. DeLillis, 1 N.J. Super. 490 (Ch. Div. 1948).
If the fee to the submerged lands were conveyed, there would be no reason to create an easement for the grantees' benefit in his own lands, as was done by the conveyance above referred to.
It is as well to be noted that even though admitting merely for the purpose of this analysis that some doubt might be engendered as to the intent of the grantor in the first of the above referred to deeds, the second and third of said deeds further remove any doubt whatsoever. In the second of said deeds, from Adcock to Josiah Webster, although the granting clause still refers to the "tract of Land, Plantation, Grist Mill and Mill Pond," the particular description again fails to describe the pond by a metes and bounds description and there is absent any reference to the pond in a recital. The line which succeeds the particular description very plainly refers, in general language, merely to the profits, privileges and advantages with the appurtenances to the same belonging.
In the third conveyance, nowhere does there appear in the grant any reference to "mill pond." However, in the clause succeeding the particular description there appears the phrase "on which tracts are conveyed a dwelling house and out houses, a grist mill and mill pond, with their appurtenances." The recital, however, refers to the lands as being identical with those conveyed in two prior deeds, (1) from Josiah Webster and wife to Isaac Adcock and wife, and (2) the deed from Isaac Adcock and wife to Josiah Webster.
*148 Patently, it was not intended that anything further be conveyed by this deed than was originally conveyed by Webster to Adcock.
It is, therefore, here concluded that Josiah Webster never divested himself of the title to the lands described in the tax sale certificate, and since the defendants obtained title through successors of the grantees of Josiah Webster, they do not meet the statutory classification of owners. Therefore, they have no right to redeem as owners.
There remains for decision the defendants' contention that their occupancy of the premises entitled them to redeem. It is their position that regardless of whether they obtained any interest or title to the pond through the several conveyances from the devisees of John S. Hopkins, a successor in title through mesne intervening conveyances from John Stratton and Moses Lippincott, the fact that they actually occupied the premises in question under no other claim of title or interest in the fee entitled them to such redemption. Otherwise stated, their position is that under the language of R.S. 54:5-54, supra, a mere trespasser occupying the land described in a tax sale certificate is legally entitled to redeem from such certificate. It was not the legislative intent to accord a mere squatter or trespasser the right to obtain from a bona fide purchaser the right to redeem a tax sale certificate from a bona fide purchaser thereof. An occupant, to come within the statutory definition, must be a lawful occupant, having a lawful right or interest in the land. Taylor v. Borgfeld, 139 N.J. Eq. 177 (Ch. 1947); Cannici v. Scott, 20 N.J. Super. 97 (Ch. Div. 1952).
It follows, therefore, as was admitted by the parties, that since the defendants are trespassers, having been held to have no title to the realty here involved, they have no right to redeem.
Judgment will therefore be entered for the plaintiffs consistent with the foregoing.