134 N.J. Super. 448 (1975)
TOWNSHIP OF SANDYSTON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
PAUL ANGERMAN, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted May 6, 1975.
Decided June 4, 1975.
*450 Before Judges KOLOVSKY, LYNCH and ALLCORN.
Morris, Downing & Sherred, attorneys for the appellant (David L. Jubanowsky, on the brief).
No brief was filed on behalf of the respondent.
The opinion of the court was delivered by ALLCORN, J.A.D.
From our review of the record, including the terms and provisions of the agreement between defendant and the United States Department of the Interior, *451 we conclude that the agreement is a lease rather than a license, and created the relationship of landlord and tenant between the parties; that the lease is for private purposes, and consequently that the interest of defendant is subject to taxation by the municipality by virtue of the Leasehold Taxing Act, N.J.S.A. 54:4-2.3.
The determination of whether a given agreement is a lease or a license depends not upon "what the parties to it choose to call it nor the language, but [upon] the legal effect of its provisions." 3 Thompson on Real Property (1959 replacement), § 1032 at 102. On the one hand, an "instrument is not a demise or lease, although it contains the usual words of demise, if its contents show that such was not the intention of the parties"; on the other hand, the "relation of landlord and tenant may exist * * * although certain collateral matters are contained in the contract of letting." Id. at 102-103.
A license is simply a personal privilege to use the land of another in some specific way or for some particular purpose or act. Id., § 1032; 49 Am. Jur.2d, Landlord and Tenant, § 5. Describing it as a "very tenuous" interest, Professor Powell likens a license to an "easement at will" whose "ephemeral character * * * precludes any protections of the licensee as against interferences with his use by the licensor." 3 Powell on Real Property, § 404.1 at 382; § 428 at 526.66; 5 Restatement, Property, "Licenses", introductory note at 3113 (1944). In contradistinction, a lease is a grant of exclusive possession to use the land for any lawful purpose, subject to reservation of a right of possession in the landlord for any purpose or purposes "not inconsistent with the privileges granted the tenant." 3 Thompson, supra, § 1032 at 107; Thiokol Chem. Corp. v. Morris Cty. Bd. of Taxation, 41 N.J. 405, 417 (1964).
By the terms of the agreement here under consideration defendant is "authorized * * * to use" a single-family dwelling, and approximately two acres of land adjoining, situated *452 within the confines of the Delaware Water Gap National Recreation Area and owned by the United States of America, for the period commencing September 15, 1971 and terminating September 1, 1976. According to the testimony of Mrs. Angerman, upon the execution of the agreement she and her husband moved into the dwelling and have been occupying the property as their private residence ever since.
The agreement waived the payment of any cash consideration by defendant. The purpose for which such use and occupancy was granted was stated to be the "rehabilitating, restoring, and the continued maintenance and protection of the improvements." In light of the waiver of cash consideration, it is a necessary and proper inference that the performance by the Angermans of the latter services constitutes the consideration  otherwise the agreement would be invalid as an ultra vires gift of public property for private use or benefit. This inference draws further support from paragraph I(f) of the rules and regulations forming part of the agreement, requiring "an annual work program defining rehabilitation and restoration projects" to be outlined which, initially, is to be directed toward "rendering the residence useable on a year round basis and protecting all the improvements from further deterioration". By the terms of paragraph II(c) all resulting improvements "become the property of the" government.
In addition to the repair and restoration work on the dwelling defendant agreed to "assist park personnel in the detection and immediate reporting of building, forest or grass fires which may occur on the land in the vicinity," and to "make frequent checks of the other National Park Service property in the vicinity and immediately report any incidents, violations or apparent damage to a representative of the National Park Service." Both undertakings are in the nature of responsibilities of scant burden, representing little more than the verbalization of the customary vigilance and awareness of conditions in his neighborhood employed *453 by any householder while in occupancy and during his comings and goings. No penalty is provided for nonperformance.
However this may be, it is plain that the agreement granted to defendant the exclusive possession of the residence and the surrounding area. The grant is made "to use" the premises as a private residence, without any words or provisions in derogation of the right to use and occupy exclusively, other than the right of the public to use any existing and newly established roads and trails on the land. Were the grant not one of exclusive possession, there would have been no need for the government to expressly reserve to itself "the right to enter the premises at any time for inspection * * * in cooperation with" defendant.
The circumstance that the agreement, though for a fixed term, is terminable "at the discretion of the Director, National Park Service", does not constitute the agreement a license. At most, such right of termination would convert the tenancy from one for a fixed term to a tenancy at will. 3 Thompson, supra, §§ 1020, 1021; 49 Am. Jur.2d Landlord and Tenant, § 75. It in no way affects the exclusivity of the tenants' possession during the continuance of the term, and does not operate to transform a lease into a license.
In light of the foregoing there can be no doubt that the agreement is a lease and that it created the relationship of landlord and tenant between the parties to it. Equally without question is the fact that the lease is one for a private use, as distinguished from a lease in furtherance of a public purpose or a lease incidental to achieving that public purpose for which tax exemption is granted. Todd Shipyards Corp. v. Weehawken, 45 N.J. 336 (1965).
In short, the sole purpose of the agreement was to provide a private dwelling for defendant and his family, in consideration of the undertaking to repair and restore the house. In the words of Mrs. Angerman, the house "was in a very bad condition", and she and her husband "fixed it up *454 to live in it." There is nothing in the record to indicate that either Mr. Angerman or Mrs. Angerman was employed by the National Park Service in any capacity, let alone in a position the duties of which compelled on-site residence. Certainly it was not necessary for defendant and his family to reside in the house in order to repair and restore it, any more than it is essential for a building contractor and his employees to reside in any residential building which he has contracted to repair and restore. Compare, Thiokol Chem. Corp. v. Morris Cty. Bd. of Taxation, supra, 41 N.J. 405.
This disposition makes it unnecessary to pass upon the question of defendant's failure to exhaust his administrative remedies by appeal of the assessments to the county tax board  an issue not raised by the plaintiff at the trial level.
Accordingly, the judgment of the Sussex County District Court is reversed and the cause remanded with directions to enter judgment in favor of plaintiff and against defendant in the amounts demanded.