283 N.J. Super. 462 (1994)
662 A.2d 588
SECURITY PACIFIC NATIONAL BANK, PLAINTIFF,
v.
LINDA MASTERSON, DEFENDANT.
Superior Court of New Jersey, Chancery Division Union County General Equity Part.
Decided November 10, 1994.
*463 William M.E. Powers, Jr., for plaintiff.
Joseph S. Masterson, defendant, pro se.

OPINION
BOYLE, P.J.CH.
In Chase Manhattan v. Josephson, 135 N.J. 209, 638 A.2d 1301 (1994), the New Jersey Supreme Court held that foreclosing mortgagees are subject to N.J.S.A. 2A:18-61.1 to -61.12 (the Anti-Eviction Act). This case tests the scope of the protections afforded tenancies entered into with mortgagors whose property is subsequently foreclosed. Specifically, the question presented is whether the New Jersey courts must automatically give vitality to a lease which purports to have been entered into with a defaulting mortgagor when the alleged tenant claims shelter under the Anti-Eviction Act.
Before a person may be deemed a tenant within the purview of Chase Manhattan v. Josephson, the validity of the lease upon which this person relies must be established. Certainly, the Anti-Eviction Act contemplates the existence of a valid lease before its protections may be invoked. For the following reasons, this court holds that the disputed lease is of no efficacy as it was not entered into at arms length. Instead, the subject lease was a sham, concocted solely for the purpose of frustrating plaintiff's efforts to foreclose upon its security.
On April 9, 1986, Arthur P. Attenasio and Ralph De Fiore conveyed by deed property commonly known as 515 Coleman Place, Westfield, New Jersey to Mary Masterson, Linda Masterson, and Lisa Masterson for a stated consideration of $200,000. On July 25, 1988, Mary Masterson deeded her interest in the property to Linda and Lisa Masterson for a stated consideration of $1. On January 12, 1989, Linda and Lisa Masterson remortgaged the subject property with a loan from Goldome Realty Credit Corporation (Goldome). This loan was secured by a note *464 and mortgage. On March 13, 1989, Goldome assigned its note and mortgage to Security Pacific National Bank. Ultimately, this mortgage was serviced by KeyCorp Mortgage, Incorporated, the successor to Goldome as Custodian/Trustee.
The subject mortgage was dated January 12, 1989, and secured a note of the same date which was in the original principal amount of $221,000.00. The note was payable over a thirty year term and required monthly payments $1,407.54 for the payment of principal and interest. Defendants subsequently failed to make the payments as required under the note. This failure constituted an event of default and plaintiff thereafter elected to accelerate the payment of the entire balance due under the terms of the note and mortgage. Thus, pursuant to its rights under the note and mortgage, on February 22, 1991, plaintiff filed this action to foreclose the subject mortgage. Plaintiff named the mortgagors Lisa and Linda Masterson who are the owners of record of property as the defendants to this action. Thereafter, the case proceeded in the ordinary course and on December 2, 1991, a final judgment of foreclosure was entered by the Superior Court of New Jersey wherein plaintiff was awarded possession of the subject property.
A sheriff's sale of the property was then scheduled and postponed eight times, primarily as a result of several bankruptcy filings made on behalf of defendants. The property was released from the protection of the automatic stay provisions of § 362 of the United States Bankruptcy Code with respect to the fourth bankruptcy on January 4, 1994. As a result, a sheriff's sale was scheduled for April 27, 1994. On January 25, 1994, yet another bankruptcy was filed on behalf of Lisa Masterson in an apparent attempt to further delay the sale of the property. However, the fifth bankruptcy did not stay the sheriff's sale, because the bankruptcy court's January 4, 1994 order, which released the subject premises from the automatic stay, specifically provided that plaintiff would be "permitted to proceed against [the] premises [at] 515 Coleman Place, Westfield, NJ, without regard for any *465 automatic stays issuing as a result of any bankruptcy petition filed...." As a result, on April 27, 1994, the property was finally sold by the Sheriff of Union County to the plaintiff for a bid of $100. On June 15, 1994, the plaintiff obtained a writ of possession pursuant to the judgment of foreclosure.
On August 9, 1994, an order to show cause was filed, ostensibly by the defendants, on behalf of undisclosed "tenants" seeking to enjoin the plaintiff from evicting the occupants of the subject property. Annexed to the affidavit in support of the order to show cause was a document which purported to be a letter dated May 19, 1990, from Linda Masterson addressed to Diane Germain of Goldome stating that her address was 873 Country Club Road, Bridgewater, New Jersey, and that her parents and their children occupied the 515 Coleman Place property under a lease agreement. This letter formed the basis of the claim that Joseph and Mary Masterson (defendants' parents) and other family members residing at 515 Coleman Place occupied the property as tenants and were therefore protected by the Anti-Eviction Act under the New Jersey Supreme Court's recent decision in Chase Manhattan, supra, 135 N.J. 209, 638 A.2d 1301. Accordingly, this court imposed temporary restraints pending further order of the court.
Plaintiff contested the validity of the May 19, 1990 letter which did not bear a postmark or other acknowledgement that would verify its existence prior to defendants' preparation of the order to show cause. Diane Germain subsequently certified that Goldome never received this letter. The authenticity of this letter was further called into question by subsequent discovery which revealed the fact that Schedule G of the bankruptcy petition filed on November 1, 1993, by Linda Masterson indicated that her real property was not subject to any executory contracts or unexpired leases. Similarly, Schedule I of the petition indicated that Linda Masterson received no income from real property. The bankruptcy petitions filed on January 25, 1994, and on April 26, 1994, by Lisa and Linda Masterson, respectively, likewise indicated an absence of any executory contracts or income from real property.
*466 As a result of the foregoing, plaintiff moved for an order dissolving the temporary restraints, extending its writ of possession, and directing the sheriff of Union County to execute the writ of possession. Plaintiff argued that the purported lease was a sham and that the papers were back-dated in light of the Chase Manhattan decision. Plaintiff's position was supported by several facts. First, defendants could not provide any canceled checks that would indicate rent was being paid by Joseph Masterson to either of his daughters. Instead, Joseph Masterson insisted that all payments made by him to his daughters were in cash. Secondly, the proffered rent of $500 per month did not seem reasonable in light of the fact that the carrying charges for the property were $2,049.71 per month of which $1,407.54 represented the principal and interest payments due to plaintiff, $598.17 as escrow for taxes, and $44 as escrow for insurance. Additionally, the alleged lease was for a ten year term with a first option to renew the lease at $1,000 per month for another ten years and a second option to renew the lease for yet another ten year period at $2,000 per month. Furthermore, plaintiff supplied the court with an appraisal from Allyson Appraisal Service which indicated that the property had a current rental value of between $1,800 and $2,000 per month. This appraisal was uncontradicted by defendants.
On October 26, 1994, this court conducted a pretrial conference in an effort to resolve difficulties relating to plaintiff's efforts to obtain discovery. At this conference, it was revealed to the court through the testimony of both Linda and Lisa Masterson that Joseph Masterson was attempting to perpetrate a fraud upon the court. The sisters claimed that they had never entered into a lease agreement with Joseph Masterson and that they had never signed the affidavits offered in support of the August 9, 1994, order to show cause. At trial Joseph Masterson admitted signing his daughters' names to the purported lease, the affidavits in support of the order to show cause, a motion to vacate default judgment which had been entered during the original foreclosure action and several of the bankruptcy petitions which he had prepared without his daughters' knowledge or consent.
*467 Joseph Masterson claimed that he had signed his daughters' names to these documents pursuant to a power of attorney that his daughters had executed in his favor. Masterson claimed that these powers of attorney not only gave him the power to sign documents on their behalf but also gave him the power to sign the names of his daughters without indicating in any way that the documents were signed by other than his daughters. Obviously, even if the agreement had so provided, it would be contrary to the well settled law of New Jersey. See N.J.S.A. 2C:21-1a(2); Bank of Am., Nat. Trust and Sav. Ass'n v. Horowytz, 104 N.J. Super. 35, 38, 248 A.2d 446 (Law Div. 1968).
The Chase Manhattan decision dramatically affected the rights of foreclosing mortgagees in situations where the property is subject to a tenancy. A review of this decision is necessary to provide a backdrop to this current controversy.
Writing for the majority, Justice Stein stated the Court's decision as follows:
[w]e therefore hold that N.J.S.A. 2A:18-61.3b applies the Anti-Eviction Act to foreclosing mortgagees, and thus supersedes the Court's decision in Guttenberg. As amended the Act protects tenants from eviction by foreclosing mortgagees irrespective of whether their tenancy was established before or after the execution of the mortgage.
[Chase Manhattan, supra, 135 N.J. at 235, 638 A.2d 1301 (emphasis added).]
This holding is best understood in light of the factual context from which it arose. In 1973, the Josephsons moved into a single-family home owned by the Carteret School for Boys (Carteret) pursuant to a one-year lease. Id. at 215, 638 A.2d 1301. After the lease expired, the Josephsons continued their tenancy pursuant to an oral agreement to pay the same rent on a month-to-month basis. Ibid. This arrangement continued until 1987. Ibid. In spite of the month-to-month agreement, the Court considered this arrangement a "continuing tenancy." Id. at 216, 638 A.2d 1301. Carteret then sold the property consisting of three single-family homes, one of which was occupied by the Josephsons, to the Werners who financed the purchase in part with a loan from Chase Manhattan which was secured by a mortgage. Ibid. The *468 Werners subsequently defaulted on the loan and in March 1991 the Werners settled with Chase by conveying a deed for the property in lieu of foreclosure. Ibid. The three single family homes on the property were occupied by tenants who were paying what Chase characterized as below fair-market value for these rental properties. Ibid. Accordingly, Chase named the tenants as defendants to the foreclosure action so that it could evict them and obtain exclusive possession of the property. Ibid. Chase then moved for summary judgment and prevailed. Ibid. The Appellate Division affirmed and the Supreme Court granted certification. Id. at 217, 638 A.2d 1301.
The Court began by recounting its decision in Guttenberg Savings & Loan Ass'n v. Rivera, 85 N.J. 617, 428 A.2d 1289 (1981), in which it held that the Anti-Eviction Act did not apply to foreclosing mortgagees when their mortgage antedated the tenants' leasehold interest. Chase Manhattan, supra, 135 N.J. at 220, 638 A.2d 1301. A significant reason for the Court's holding in Guttenberg was "the inequity of saddling mortgagees with various types of burdensome leases improvidently entered into by the mortgagor subsequent to execution of the mortgage." Id. at 221, 638 A.2d 1301 (citing 85 N.J. at 632-33, 428 A.2d 1289). However, the Josephson Court felt that the 1986 amendments to the Anti-Eviction Act justified a different result because they were designed to "protect[] against the use of pretextual evictions to facilitate renovations that would justify higher rentals or achieve conversion of the building to cooperative or condominium status." Id. at 221-22, 638 A.2d 1301 (citation omitted). The Court further explained that the mechanism by which the act attempts to accomplish its goal is to "extend liability for pretextual evictions to subsequent owners." Id. at 222, 638 A.2d 1301. Ultimately, the Court held that the 1986 amendments were intended to include mortgagees as successors in ownership or possession to owners and landlords. Id. at 232, 638 A.2d 1301.
The foregoing makes it eminently clear that the intent of the Anti-Eviction Act is to protect (1) blameless tenants (2) from *469 pretextual evictions. Certainly, a person who enters into a lease agreement in other than an arms length transaction does not qualify as "blameless" and will not be afforded shelter under the Anti-Eviction Act. In this case, the lease was not negotiated at arms length. In fact, Masterson negotiated the lease with himself under the pretext of a power of attorney. Obviously, this court will not recognize such a lease and will not permit it to frustrate Security Pacific's security interest in the property.
As noted, this case did not even rise to the level of a conspiracy, as both Lisa and Linda Masterson denied having ever entered into a lease agreement with their father. However, this case demonstrates the danger that mortgagors may use the Chase Manhattan decision to recast the Anti-Eviction Act into a sword from the shield it was intended to be. Mortgagors may attempt to work in concert with family members or friends and enter into unfavorable leases and thereby attempt to frustrate the foreclosure process. However, this court notes that it is empowered to inquire into the validity of a lease when the lessee claims Anti-Eviction protection. In fact, to do any less would be to turn the Anti-Eviction Act on its head. Declining to inquire into the validity of leases would be tantamount to subjecting blameless mortgagees to pretextual leases.
When considering the legitimacy of a lease in this context, the court's determination must be informed by all of the principles of reason which imbue its judgment in its fact finding capacity. In this regard, there are several factors which a court need consider. Among the relevant factors are: the relationship of the parties to the lease, whether the rental payments called for in the lease represent the fair rental value of the property, and the length of the lease.
In this case, this court was confronted with a lease allegedly entered into between parents and their children. This court notes that conveyances between near relatives or close friends are subject to close scrutiny. Johnson v. Lentini, 66 N.J. Super. 398, 406, 169 A.2d 208 (Ch.Div. 1961); Coles v. Osback, 22 N.J. Super. *470 358, 364, 92 A.2d 35 (App.Div. 1952); Equitable Life Assur. Soc. v. Patzowsky, 128 N.J. Eq. 579, 585, 17 A.2d 794 (Ch.Div. 1941); Peter v. Peter, 12 N.J. Misc. 58, 61, 169 A. 549 (Sup.Ct. 1933). Furthermore, the rental payments called for under the alleged lease were dramatically below both the carrying charges for the property and the uncontradicted appraisal provided by Allyson Appraisal Service. Finally, the lease advanced by Masterson had a ten year term with two ten year renewal periods. In effect, Masterson was attempting saddle Security Pacific with what amounts to a thirty year lease. Although no expert testimony was offered on this point, this court notes that, in residential settings, thirty year leases are not common, to say the least. Therefore, even absent the Mastersons' admissions, there was ample evidence in this case for this court to have found the lease to be a "sweetheart" deal and consequently to have invalidated it on that ground. Furthermore, had this court found the lease to have been entered into at arms length and otherwise valid, this court's inquiry would not have ended there. The next step would have been to determine whether the lease represented the fair rental value of the property or was an improvident deal from the perspective of the mortgagor. If this court had determined that the proffered lease in this case was valid but called for payments at below the fair rental value of the property, the lease would have been subject to an upward adjustment in the payments to reflect the fair rental value pursuant to the procedure outlined by the Chase Manhattan Court.
Based on the foregoing, this court orders that the temporary restraints imposed by this court's previous order are dissolved, plaintiff's writ of possession is extended, and the sheriff of Union County is hereby directed to execute the writ of possession on December 2, 1994.