758 A.2d 158

MONICA MALONE, PLAINTIFF, v. MIDLANTIC BANK,
N.A. AND ROBERT HERDELIN, GERALDINE
HERDELIN, ET AL., DEFENDANT.

Superior Court of New Jersey
Chancery Division Atlantic County

September 9, 1999.

*Joseph P. Murray* (*Joseph P. Murray*, Esq.) for Plaintiff Monica Malone.

*Richard Grossman* (*Grossman, Kruttschnitt, Heavey & Jacob*) for intervenor Robert Herdelin.

*Christopher Baylinson* (*Perskie Nehmad & Perillo*) for movants Geraldine Herdelin and Wade McKissick, intervenors.

L. ANTHONY GIBSON, J.S.C.

## I. NATURE OF ACTION

This is a tax sale foreclosure in which the occupants of the premises, who were not named as defendants, seek to reopen the Judgment in plaintiffs' favor and to redeem. Alternatively, they seek a declaration that they are *bona fide* tenants and have a continuing right to possession in accordance with the Anti–Eviction Act. Plaintiff objects and seeks an Order for possession.

## II. PROCEDURAL HISTORY

This action was initiated on July 29, 1998 at which time plaintiff filed a Foreclosure Complaint and a *lis pendens*. Although service of process was made on the owner of record, Midlantic Bank, N.A. through its successor, PNC, N.A., no Answer was filed and on December 29, 1998, an Order was entered setting the time, place and amount needed for redemption. Since no redemption was made on the designated date, final Judgment was entered in plaintiffs' favor on March 5, 1999. That Judgment was recorded on March 12, 1999 and a Certificate of Regularity was issued to

plaintiffs from Garden State Legal Services Corp. shortly thereafter.

Unbeknownst to plaintiff, on November 25, 1995, almost three years prior to the commencement of the foreclosure action, the record owner, Midlantic Bank, transferred title to the subject premises to Robert Herdelin. For reasons that continue to be a mystery, Herdelin never filed his Deed until January 21, 1999. During that three year period he also neglected to pay any taxes or other municipal charges. Sometime after the filing of his Deed in January of 1999, he received his first tax notice from the municipality. It was around that same time that he learned of the tax foreclosure. Although he did not seek to intervene, on March 29, 1999, after the entry of final Judgment, he moved to vacate the Judgment. Plaintiff's counsel resisted and cross-moved for an order of possession.

At the conclusion of oral argument on April 23, 1999, and after first permitting Herdelin to intervene (*on the court's own motion*), this court denied his application to reopen. The reasons for that ruling are set forth on the record and need not be repeated here except to say that I was not convinced that Herdelin had demonstrated excusable neglect. *R. 4:50–1; N.J.S.A. 54:5–104.67.* During oral argument on the motion Herdelin revealed for the first time that his daughter was living at the premises. Although plaintiff's counsel continued to press his cross-motion for possession, given the yet unaddressed issues relating to the possible rights of Herdelin's daughter, the court denied the application without prejudice. Herdelin was then directed to provide an appropriate certification regarding his daughter's occupancy following which the court would revisit the issue.

In response to the above directive, Herdelin supplied a certification indicating not only that his daughter was occupying the premises but she was doing so pursuant to a written lease. A copy of that purported lease was supplied and it indicated a commencement date of October of 1998, a term of three years and a monthly rental of $300.00. Named as tenants were Herdelin's

daughter, Geraldine, and also a male occupant, Wade McKissock. After conferencing the case with counsel in response to the certification, the court agreed to conduct a testimonial hearing to test the *bona fides* of the lease. Although no new motion had been made placing Geraldine Herdelin's tenancy at issue, since plaintiff's request for possession was still outstanding, I agreed to proceed with the testimonial hearing and to permit discovery in advance of the same. By this point, Ms. Herdelin and her roommate had secured their own counsel.

As part of the subsequent conferencing regarding discovery issues, the court raised the issue of whether Ms. Herdelin's occupancy might give her the right to redeem regardless of whether she was a *bona fide* tenant. See *N.J.S.A. 54:5-54.* Counsel were thus directed to brief this issue so that the court could consider this question as part of the upcoming testimonial hearing. Although by then over four months had elapsed from the entry of Judgment, neither Ms. Herdelin nor Mr. McKissock had yet made a motion to intervene and/or vacate the default. On August 9, 1999, however, two days prior to the scheduled testimonial hearing, counsel for the occupants sought to postpone the hearing in order to permit him to make such a motion. I declined to further delay the hearing to permit the motion but indicated that in spite of Ms. Herdelin's and Mr. McKissock's failure to timely move to intervene and re-open, I would proceed on the basis that they had. Since it was the court that had raised the issue as to their right to redeem, it was my determination that a motion to intervene would be a formality and that there was no need to delay what could be a dispositive ruling.

On August 11, 1999, I conducted oral argument on the issue of whether the occupants had a right to redeem pursuant to *N.J.S.A. 54:5-54* and concluded that fact issues remained relating to Ms. Herdelin's and McKissock's status, both as an occupant and a tenant, and thus it would be necessary to proceed with the testimonial hearing. The trial commenced the following day and evidence was presented by way of stipulations, exhibits and live

testimony from Herdelin, McKissock and the real estate agent for the premises. What follows are my findings of fact and conclusions of law.

## III. *FINDINGS OF FACT*

As a preliminary matter, I should note that the factual issues relating to Mr. Herdelin's failure to respond to the underlying tax foreclosure have already been recited on the record and need not be repeated here. To the extent relevant, they are incorporated by reference. As for movants' occupancy and their alleged lease, the following additional factual findings apply.

Geraldine Herdelin (*hereafter Ms. Herdelin*), is the daughter of Robert Herdelin, the unsuccessful movant in the application to vacate. Up until the fall of 1997, she was living at their family home in Pennsylvania. Sometime thereafter, at the invitation of her father, she moved into one of the properties he owned on Long Beach Island. Later on, the exact date being unknown, she moved out of the Long Beach Island property and into one of the properties her father owned and was trying to sell in Brigantine, NJ. That property is the subject property, Unit # 201 at the Sanderling Condominiums, located at 4401 Ocean Avenue.

Sometime in late 1997, subsequent to plaintiff's purchase of the tax sale certificate but prior to her initiation of this action, Unit # 201 became Ms. Herdelin's full-time residence. No formal lease was entered into between Ms. Herdelin and her father. Indeed, there was no lease, formal or otherwise. Ms. Herdelin paid no rent, no term of occupancy was discussed and all of the utility costs, including phone and cable, were in her father's name and paid by him. Although she claims that in lieu of rent, she assisted her father by cleaning some of his rental units, I am not convinced that that practice was intended to be contractual. It was quite loose and failed to include any kind of schedule that one could equate to a definable rent. Regardless of the "rent" arrangement, however, Ms. Herdelin always understood that her stay at Unit # 201 was at the pleasure of her father. She knew that the

property was for sale and being actively marketed and that she might have to move at any time. During most of her stay she continued to use her Pennsylvania address for things such as her driver's license and car registration although in October of 1998, she changed her license to reflect the Brigantine address.

During the summer of 1998, Ms, Herdelin began dating Wade McKissock (*hereafter McKissock*). At her invitation, he later moved in with her. They were subsequently engaged and she is now pregnant. No date has been set for the wedding. Although McKissock also resides at the unit on a full-time basis, he too pays no rent and uses a Philadelphia address for his driver's license and car registration. Like Ms. Herdelin, he always understood that the unit was for sale and that he might have to leave at any time. Although he too claims that he has been providing services to Mr. Herdelin in lieu of rent, his testimony on that issue was too vague to support such a claim, and was unpersuasive.

At some point, apparently following his unsuccessful application here, Robert Herdelin prepared or had someone else prepare a lease that purported to memorialize a tenancy arrangement with Ms. Herdelin and Mr. McKissock. As already noted in the procedural history, it was for three years, commenced in October 1998 and reflected a monthly rent of $300.00. Although the document purports to bear the signatures of both Ms. Herdelin and Mr. McKissock, and both testified that the signatures were theirs, neither of them sought to rely on it. Instead, their counsel offered a stipulation that they were month to month tenants and conceded that the fair market value of the premises is actually $1,000.00 per month, not $300.00 per month. There are a number of inaccuracies in the "lease". Indeed, I am satisfied that the document is bogus and was drafted after the fact in an effort to mislead the court. I am also persuaded that Ms. Herdelin and Mr. McKissock were not telling the truth when they testified that they had signed it, although even if they had, it does not reflect the arrangement by which they are in occupancy. They do not claim otherwise.

## IV. CONCLUSIONS OF LAW

Although not presented this way, the primary issue in this case is whether the movants are entitled to reopen the outstanding Judgment of Foreclosure and to redeem the tax sale certificate that forms the basis of plaintiffs' title. Subsumed within that issue is the question of whether Ms. Herdelin and Mr. McKissock have a valid and forceable lease, and/or whether their occupancy is subject to the protections of the Anti–Eviction Act. *N.J.S.A. 2A:18–61.1.* For the reasons to be related below, it is my judgment that each of those questions should be answered in the negative.

Before dealing with the analysis that impacts on these issues, some additional attention needs to be given to the procedural history. As previously noted, neither Ms. Herdelin nor Mr. McKissock are parties to this action and neither have formally moved to intervene or to reopen the Judgment entered in plaintiffs' favor on March 5, 1999. The issue of their alleged tenancy rights was first raised by Robert Herdelin as part of his response to plaintiffs' request for possession. Even after the court agreed to consider this issue and plaintiff's counsel notified Ms. Herdelin and Mr. McKissock directly, they made no effort to intervene or to seek to reopen. When they got counsel, their focus continued to be whether they had any protectable tenancy status and it was in response to that issue that the court scheduled a testimonial hearing. The issue regarding their possible right to redeem was pursued only after first being raised by the court and it was not until two days before the testimonial hearing that counsel for Ms. Herdelin and McKissock expressed a desire to formally move to reopen.

Despite the somewhat dilatory quality of their actions, at least regarding the redemption issue, this court has attempted to proceed cautiously so that the rights of these individuals could be fairly addressed. Although I declined to further delay the testimonial hearing to entertain a formal motion to reopen, I indicated to counsel that I would proceed as if these occupants had inter-

vened and thus would entertain the merits of their application. Having so ruled, I have treated them as the primary movants in this process and will thus refer to them as the "movants" in this Opinion. Although I have also viewed them as having the burden of persuasion, I should note that my findings would have been the same regardless of who had the burden.

As for the merits, as indicated, movants make two claims: first, they say that they are lawful tenants under a residential lease and, therefore, may not be evicted except for good cause as defined by the Anti–Eviction Act; secondly, they argue that regardless of whether they qualify as tenants, the are nevertheless occupants and thus entitled to redeem in accordance with the Tax Sale Act and, in particular, *N.J.S.A. 54:5–54.*

## A. TENANCY CLAIM

■ Contrary to the movants' assertion that they are tenants, the facts as I have found them do not support such a claim. Even if one disregards the false and misleading information submitted by Robert Herdelin and movants' testimonial endorsement of it, the totality of the facts do not support an enforceable lease. Movants occupy the premises at the pleasure of Robert Herdelin. There is neither a definite term to their occupancy nor a rental arrangement that is either reasonable or sufficiently clear to define a legal relationship between them. Ms. Herdelin and her fiance both recognize that they can be removed at any time by Mr. Herdelin. In essence, they are no more than licensees; that is, they have been given a personal but revocable privilege to utilize the premises. See generally *Township of Sandyston v. Angerman,* 134 *N.J.Super.* 448, 451, 341 *A.*2d 682 (App.Div.1975).

The circumstances confronting this court are similar to those that faced my colleague, Judge Boyle, in *Security Pacific Nat. v. Masterson,* 283 *N.J.Super.* 462, 662 *A.*2d 588 (Ch.Div.1994). Like here, Judge Boyle was presented with a claim of a tenancy purportedly protected by the Anti–Eviction Act, a position that was challenged by a foreclosing mortgagee. The mortgagee argued that the alleged lease was a sham and designed to deprive

the mortgagee of the possessory rights that would normally flow from a successful foreclosure. Judge Boyle agreed factually and thus concluded that the occupants were not protected by the Anti-Eviction Act. As he noted, that Act is only intended to protect *bona fide* and blameless tenants from pretextual evictions. *Id.* at 469, 662 *A.*2d 588. Since he found the occupants to be neither *bona fide* nor blameless, he ruled for the mortgagee.

When one applies these standards to the occupancy at issue here, several factors must be considered: the relationship of the parties to the lease, whether the rental payments called for in the lease represent fair rental value and whether the length of the alleged lease is reasonable. *Id.* at 469–470, 662 *A.*2d 588. The tenancy claimed here fails on all three grounds. To begin with, the alleged lease is between a father on the one hand, and a daughter and the daughter's fiance on the other hand. Leases between family members are always subject to close scrutiny. *Johnson v. Lentini,* 66 *N.J.Super.* 398, 406, 169 *A.*2d 208 (Ch.Div. 1961). As for the amount of the "rent", the sum designated in the written lease is less than one-third of the market value. As for the movants' references to cleaning and doing odd jobs as representing the functional equivalent of rent, they were simply too vague to be persuasive. Finally, as for the term, although movants sought to distance themselves from the written lease submitted by Mr. Herdelin, they nevertheless testified that they had signed it and agreed to its terms, including its duration, i.e., three years. However, that claim cannot be reconciled with the fact that Mr. Herdelin was actively advertising the premises for sale and representing that it was vacant and ready for immediate occupancy. Movants subsequently offered to stipulate that they were month to month tenants but plaintiff's counsel never agreed to that stipulation and none of the testimony supported it. Thus, I find that movants do not have a *bona fide* tenancy.

## B. *RIGHT TO REDEEM*

Movants next claim is that, even if they are not tenants and protected by the Anti-Eviction Act, they are nevertheless occu-

pants and thus entitled to redeem in accordance with *N.J.S.A. 54:5–54*. That statute, in pertinent part, provides as follows:

> Except as hereinafter provided, the owner, his heirs, holder of any prior outstanding tax lien certificate, mortgagee, or occupant of land sold for municipal taxes, assessment for benefits pursuant to R.S. 54:5–7 or other municipal charges, may redeem it at any time until the right to redeem has been cut off in the manner in this chapter set forth, by paying to the collector or to the collector of delinquent taxes on lands of the municipality where the land is situate, for the use of the purchaser, his heirs or assigns, the amount required for redemption as hereinafter set forth.

Although the above statute does not define "occupant" and relatively few cases discuss the term, this court is not without guidance. In *Cannici v. Scott*, 20 *N.J.Super.* 97, 89 *A.*2d 103 (Ch.Div.1952), for example, the court specifically discussed the term "occupant" and concluded that for purposes of this statute, it means one "having a lawful right or interest in the land." *Id.* at 99, 89 *A.*2d 103. In that case the occupant was in actual possession of the land and was the holder of a tax sale certificate, although expired. Because the certificate had expired, the court held that the occupant had no lawful right or interest in the property, and thus no right to redeem. *Id.* at 100, 89 *A.*2d 103. It is clear from the result and the court's reasoning that for purposes of the redemption statute, the term "occupant" should not be applied literally.

Similar reasoning was applied in the case of *Taylor v. Borgfeld*, 139 *N.J. Eq.* 177, 50 *A.*2d 654 (Ch.1947). There, the occupant sought to intervene in a pending foreclosure of a tax sale certificate. Although the occupant had taken possession pursuant to a lease arrangement with the municipality in which land was located, the court found that the municipality had no legal right to grant possession, and thus the occupant never obtained a "lawful right or interest in the land". *Id.* Stated differently, the court ruled that since the municipality lacked the power to transfer any interest in the land, the alleged lessee receive none; nor did his occupancy, by itself, create one. Based on this ruling and the result in the *Cannici*, not every occupant is entitled to redemption under the Tax Sale Act; such a right extends only to those with a

lawful interest in land. In so holding, these cases disagree with an earlier judicial determination that occupancy alone reflected an interest in the land. See *Hannold v. Cundey*, 131 *N.J.L.* 87, 88, 35 *A*.2d 214 (1944); 139 *N.J.Eq.* at 179, 50 *A*.2d 654.

The same type of analysis was utilized in *Jefferson v. Davis*, 25 *N.J.Super.* 135, 95 *A*.2d 617 (Ch.Div.1953). In that case the plaintiff sought to set aside an award of a Certificate of Redemption of a tax sale certificate. It was plaintiff's position that the redeeming party did not have a sufficient interest in the property to qualify for redemption, either as a title holder or as occupants. The court agreed. After first disallowing defendants' alleged ownership interest, the court concluded that defendants failed to qualify as "occupants", at least in the sense contemplated by *N.J.S.A. 54:5-54*. Although the court did not explain how the defendants came into possession, there was no question that they actually occupied the property. Despite that occupancy, the court concluded that, absent a title interest or some other *bona fide* interest in the land, occupancy alone made them mere trespassers. As the court stated, it was not the intent of the legislature to accord a trespasser the right to obtain from a *bona fide* purchaser the right to redeem a tax sale certificate. *Id.* at 148, 95 *A*.2d 617. "An occupant, to come within the statutory definition, must be a lawful occupant, having a lawful interest in the land." *Id.* at 148, 95 *A*.2d 617.

Further guidance can be found in the case of *Lipman v. Shriver*, 51 *N.J.Super.* 356, 144 *A*.2d 37 (Law Div.1958). Although the court there was dealing with an earlier version of *N.J.S.A. 54:5-54* and an analysis of a phrase now deleted from the statute, "other person having an interest in land", its reasoning is nevertheless instructive. As the court noted, the true intention of the Tax Sale Law must be gathered from the spirit and policy of the Act rather than from the literal sense of particular terms. *Id.* at 358–359, 144 *A*.2d 37. *See also Kerr v. Trescher*, 34 *N.J.Super.* 437, 440, 112 *A*.2d 598 (Ch.Div.1955). The court then held that to determine what interest or kinds of interests entitle the holder of

those interests to redeem under *N.J.S.A. 54:5–54*, it is necessary to also determine what interests would be cut off by a tax sale foreclosure. Only those that would be cut off need to be preserved through the redemption process. For example, it has been held that the holder of an easement is not entitled to redeem since its interest cannot be destroyed by the foreclosure of a tax sale certificate. *Id.* at 359, 144 *A.*2d 37 citing *Niestat v. Equitable Security Co.*, 138 *N.J.Eq.* 480, 48 *A.*2d 907 (Ch.1916). On the other hand, the holder of an unenforceable mortgage can. *Lake Waterloo Corp. v. Kestenbaum*, 10 *N.J.* 525, 92 *A.*2d 478 (1952).

If the analysis in the *Lipman* case were applied to the facts here, movants' claimed right would not qualify for redemption because it is not an interest that would be cut off by the foreclosure of a tax sale certificate. Movants' occupancy rights, to the extent they may have any, arise from the purported lease arrangement they have with Ms. Herdelin's father. Such a lease, if *bona fide*, would clearly represent an interest in land, *Taylor v. Borgfeld, supra.* Given the requirements of the Anti–Eviction Act, *N.J.S.A. 2A:18–61.1* and the ruling of our Supreme Court in *Chase Manhattan v. Josephson*, 135 *N.J.* 209, 638 *A.*2d 1301 (1994), such an interest cannot be cut off by a foreclosure action. This is true regardless of whether the lease was commenced before or after the creation of the lien being foreclosed. *Ibid.* Thus if one accepts movants' purported basis for their interest in the property, their interest could not be cut off by the foreclosure of the tax sale certificate and thus should not be an interest entitled to the redemption rights of *N.J.S.A. 54:5–54. Lipman v. Shriver, supra.*

When the reasoning of these cases is applied to the facts as I have found them, it is clear that although there is no question that movants came into possession lawfully, that is, with the permission of the owner, it is also true that they currently have no enforceable leasehold in the property, either legally or equitably. Without an enforceable lease, they have no lawful interest in the property. Given the absence of a lawful interest and given the fact that movants' alleged tenancy, assuming it was *bona fide*,

would not be cut off by a tax sale foreclosure, their occupancy is not of the type that would entitle them to redeem under *N.J.S.A. 54:5–54*. It is also clear that however one describes movants' "interest", it can rise no higher than that of Robert Herdelin and his interest was extinguished by the Judgment already entered in this case. Finally, it must be remembered that the express policy of the Tax Sale Act is that it be liberally constructed so as to bar the right of redemption, not preserve it, the goal being that marketable titles to property be secured. *N.J.S.A. 54:5–85, Mill-burn Tp. in Essex County v. Block 1208, Lot 2*, 189 *N.J.Super.* 523, 461 *A.*2d 163 (Ch.1983). Since the redemption provisions of the Tax Sale Act must be viewed with that goal in mind, *N.J.S.A. 54:5–54* should not be read to support a right of redemption in occupants who are in possession merely at the will of the owner. This is particularly true, when, like here, that owner has forfeited his interest in the property.

## V. CONCLUSION

For all of the reasons related above, it is the opinion of this court that Geraldine Herdelin and Wade McKissick do not have an enforceable leasehold interest in the premises known as Unit # 201, 4401 Ocean Avenue, Brigantine, NJ. Since they remain in the unit solely at the discretion of Geraldine's father and lack an enforceable lease, they are also not entitled to the protections of the Anti–Eviction Act. For the same reasons they do not have the kind of lawful interest that would entitle them to redeem the tax sale certificate; that is, they are not the type of occupant contemplated by *N.J.S.A. 54:5–54*. Given the above analysis, the court need not further treat the procedural problems relating to the timing of this application and/or plaintiff's failure to join movants as parties in the first place.

Movants' application to establish their right to continue in possession and/or to redeem is therefore denied. Plaintiff's request for possession will be granted and a Judgment will be

entered to that effect. Movants will be required to vacate the premises by October 1, 1999.